UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

SUSAN V. WALLACE,              :      Case No. 18 Civ. 6525 (RA)
      Plaintiff,

                          :

      v.

                          :

MARK T. ESPER, SECRETARY OF THE
DEPARTMENT OF THE ARMY,      :
      Defendant

------------------------------------------------------

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION
TO MOTION TO DISMISS THE AMENDED COMPLAINT IN PART

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT................................................................................... 3

II. BACKGROUND …............................................................................................... 10

III. ARGUMENT…....................................................................................................... 13

A.   Movant fails to meet its burden for dismissal of Count One of Amended Complaint…...….13

B.   Movant fails to meet its burden for dismissal of Count Two of Amended Complaint……...24

C.   Movant fails to meet its burden for dismissal of Count Three of Amended Complaint……28

D.   Movant fails to meet its burden for dismissal of Count Four of Amended Complaint……...32

E.   Movant fails to meet its burden for dismissal of Count Five of Amended Complaint……...34

F.   Movant fails to meet its burden for dismissal of Count Six of Amended Complaint………39

IV.  CONCLUSION…………………………………………………………………………40

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………………..

*Conley v. Gibson*, 355 U.S. 41 (1957)…………………………………………………………..

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) …...........................................................

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)……………………..

*Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014)………………………………..

*Mathirampuzha v. Potter*, 548 F.3d 70 (2d Cir. (2008)..............................................................

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) …..................................................................................................................

*McGuinness v. Lincoln Hall*,
263 F.3d 49 (2d Cir. 2001)…..........................................................................................................

*Vasquez v. Empress Ambulance Serv., Inc*., 2016 BL 280409, 2d Cir.,
No. 15-03239 (August 29, 2016).....................................................................................................

5 U.S.C. § 2302(b)(8) …................................................................................................

5 U.S.C. § 7703(b)(2) …................................................................................................

29 U.S.C. § 621 …........................................................................................................

29 U.S.C. §§ 501, 701 …...............................................................................................

29 U.S.C. § 2501 …......................................................................................................

38 U.S.C. § 4301 …......................................................................................................

42 U.S.C. § 12101 …....................................................................................................

42 U.S.C. § 2000e …....................................................................................................

Regulations

29 C.F.R. § 1614.105(a)(1) …........................................................................................

29 CFR § 1630…………………………………………………………………………………….

Army Regulation 601-10…………………………………………………………………………..

EEOC Management Directive 110...........................................................................................

## I. PRELIMINARY STATEMENT

Relying on to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,[1]

Defendant Mark T. Esper ("Defendant"), Secretary of the Department of the Army (the "Army"

seeks dismissal of Counts One through Seven and Count Nine of the Amended Complaint (Dkt.

No. 12) by Plaintiff Susan V. Wallace ("Plaintiff").

Plaintiff was employed by Army as a General Attorney GS13 from May 6, 2010 to April

15, 2017, assigned to its New York District office in New York, New York from December 2010

to April 15, 2017 when Army removed her from Federal service. In sum, the following are

Plaintiff's causes of action in the Amended Complaint, the grounds Army states for dismissal of

each, and a brief description of Plaintiff's objections (omission from this Preliminary Statement

does not imply abandonment):

Count One, Army discriminated against Plaintiff on the basis of her disabilities in

violation of the Rehabilitation Act of 1973, 29 U.S.C. § 501, 701 and Title I of the Americans

with Disabilities Act of 1990 (ADA), as amended by the American With Disabilities

Amendment Act (ADAAA), 42 U.S.C. § 12101, *et seq*. Kindly ignore Section 504 of the

Rehabilitation Act alleged in the Count title, it should be Section 501. Ref. Df Memo p. 14, fn 1.

Army asserts that this claim must be dismissed for "failure to state a claim upon which relief

could be granted." Army is misstating this as a claim involving only one disability when several

are alleged. Army is continuing to cite only the original ADA, applying standards for disability

and reasonable accommodation that are not even correct under the ADA, and are superseded by

the 2008 amendments of the statute and the necessary EEOC regulations to the ADAAA. 29

CFR § 1630. Army would have the Court dismiss by finding colorable facts on a complaint

without discovery and trial (as set forth further below (as set forth further below).

Count Two, Army discriminated on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* Army asserts that this claim must be dismissed for "failure to state a claim upon which relief could be granted." Army would have the Court dismiss by finding colorable facts on a complaint without discovery and trial (as set forth further below (as set forth further below).

Count Three, Army discriminated on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII). Army asserts that this claim must be dismissed for "failure to state a claim upon which relief could be granted." Army would have the Court dismiss by finding colorable facts on a complaint without discovery and trial (as set forth further below (as set forth further below).

Count Four, Army created a hostile work environment (HWE) for Plaintiff in violation of Title VII. Army asserts that this claim must be dismissed for "failure to state a claim upon which relief could be granted." Army is conflating harassment and discrimination with HWE thereby misconstruing the nature of Plaintiff's claim as harassment, which is legally and factually distinct from HWE, and conduct based on membership in a protected class which is not an element of HWE. Discrimination can create a HWE but so can other types of misconduct even if not tightly connected to EEO policies and rules. Army would have the Court dismiss by finding colorable facts on a complaint without discovery and trial (as set forth further below (as set forth further below).

Count Five, Army retaliated against Plaintiff for engaging in protected Equal Employment Opportunity activity in violation of Title VII. Army asserts that this claim must be dismissed for "failure to state a claim upon which relief could be granted." Army is erroneously misstating the standard for a Title VII retaliation claim as requiring discrimination when the two

are distinct because retaliation claims are for engaging in protected EEO activity, not merely being subject to discrimination. One must be a member of a protected class to suffer actionable "discrimination" under Title VII but not so for retaliation. Army would have the Court dismiss by finding colorable facts on a complaint without discovery and trial (as set forth further below (as set forth further below).

Count Six, Army committed reprisal against Plaintiff for engaging in protected communications in violation of and the Whistleblower Protection Enhancement Act (WPEA), 5 U.S.C. § 2302(b)(8). Army is erroneously conflating this and the EEO retaliation claim in Count Five, calling both by the Title VII term "retaliation" and citing the Title VII basis of "protected activities." WPEA addresses *reprisal* for *protected communications* with different analysis, exhaustions, standards of proof, remedies from Title VII retaliation. Army asserts that this claim must be dismissed for "failure to state a claim upon which relief could be granted." Army would have the Court dismiss by finding colorable facts on a complaint without discovery and trial (as set forth further below (as set forth further below).

Count Seven, violation of Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2501, *et seq.* – Army seeks dismissal for failure to comply with exhaustion requirements. Plaintiff does not consent to dismissal but withdraws Count Seven with no right of action to refile. A separate Withdrawal will be filed.

Count Eight, seeking judicial review, pursuant to the Civil Service Reform Act (CSRA), 5 U.S.C. § 7703(b)(2), is <u>not</u> a subject of the instant Motion to Dismiss. As to tolling of Army's time to respond to it, Plaintiff leaves it to its proof and reserves her right to object on any ground including timeliness.

Count Nine, under the Uniformed Services Employment and Reemployment Rights Act

(USERRA), 38 U.S.C. § 4301, *et seq.* – Army seeks dismissal for failure to comply with exhaustion requirements. Plaintiff does not consent to dismissal but withdraws Count Nine without prejudice to refile after compliance with exhaustion requirements (USERRA has no statute of limitations). A separate Withdrawal will be filed.

As notes for all the above Counts at issue, Army seeks dismissal without discovery because "Plaintiff's allegations are not plausible." Army sets forth the standard for Rule 12b dismissals at pp. 13-14 of its Memorandum. "Plausibility" under *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014) is not a pleading standard that warrants dismissal of the Amended Complaint:

> [F]acial plausibility" to survive a Motion to Dismiss is "when the 'factual content' of the complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'" … "[M]ere 'conclusions of law or unwarranted deductions of fact' need not be accepted as true."

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (citation and internal quotation marks omitted in original).

Most of the decisions Army cites are of limited assistance without actually comparing one's own pleading with the basis of the decision for causes, standards of proof, sufficient or insufficient pleading language. Throughout its Motion Army repeats the decisional descriptions or definitions of it but those are amorphous and Army is not providing relevant examples of what plausible looks like.

Army does not seem to be recognizing the special rules pleading the EEO causes (Counts One – Five). Although Army seeks dismissal of a number of the instant claims arguing no plausible allegations or an insufficient number, "plausible" is any number of allegations and amount of detail. Whatever pleading deficiencies Plaintiff has the remedy should be amendment not dismissal.

As to denying Plaintiff any Pro Se assistance or consideration because she is a member of the Bar (Df Mem pp. 13-14), Plaintiff is presently licensed outside New York. For twenty years before hire as an Army GS, she practiced private, State and local public sector employment law and litigation, in District Court but limited exposure to Federal sector employees. She has only reserve military service, no Active Duty for exposure to Federal sector. The gravamen of the instant action is that Army supervisors hired her to a position with substantial labor and employment law and trial counsel duties, but gave her few or none of that, then as alleged in Counts One through Five, engaged in discrimination, harassment, retaliation, reprisal including removing what employment and litigation duties she had. By early 2016, over a year before her removal from Federal service, Plaintiff's supervisors had removed her duties down to de minimus legal work of any kind, the employment work becoming none shortly thereafter. Army did not allow Plaintiff to appear in a U.S. District Court; the last time was in her private practice circa 2008. She has not filed a complaint or defended a Motion to Dismiss in over ten years until the instant case. She is not current on the caselaw and all the FRCP. Plaintiff could not just quit her job as sole support of her son who in the middle of the foregoing was seriously injured in Army basic training requiring four hip and pelvic surgeries and ongoing. Plaintiff's supervisors harassed her while she was in the hospital with her son with complications. The years of the professional deprivation, struggles to keep her military status and security clearance clear of the pervasive criminality in the Corps of Engineers, and unrelenting hostile work environment aimed at forcing her to quit degraded her knowledge and skills and left her exhausted and suicidal.

Plaintiff has not worked full-time as a lawyer or practiced employment law since removal from Federal service April 15, 2017. OPM awarded Plaintiff a disability pension in 2018. Plaintiff's part-time reserve law practice (Army Judge Advocate) ended with a normal retirement

June 2018. Plaintiff has not practiced law at all since. Plaintiff has no office, limited home

equipment, and no assistance.

Thus, Plaintiff is situated wholly differently from lawyers refused Pro Se consideration in

the authorities Army offers - apparently nondisabled, in fully active practice, with offices and

assistance.

While Army is refuting that Plaintiff like other lawyers denied it, when she clearly is not,

in arguing for dismissal of Count Seven, Army's counsel makes an ad hominum attack on

Plaintiff's competence, which should estop Army from obstructing Pro Se assistance or

consideration to Plaintiff:

> One would expect Plaintiff to have been aware of the benefits available under the FMLA,
> given her allegations that she had "over 20 years private practice experience mostly in
> labor and employment law" and her job duties included advising agency officials on
> compliance with labor and employment law.

Df Memorandum p. 29-30, citing AC ¶¶ 11, 59.

There is no factual support for the comments that Plaintiff should have Federal sector

expertise from her private practice and from the subject position. However, Plaintiff did

incorrectly plead the FMLA claim (Count Seven) because Plaintiff did not know FMLA has no

private right of action in the Federal sector. Plaintiff is withdrawing it and Count Nine. Plaintiff

filed that USERRA claim unaware of a Federal sector exhaustion requirement. Plaintiff's errors

with Federal sector claims shows se is not similarly situated to other lawyers denied Pro Se

consideration.

Army attempts to trivialize this action as "boilerplate claims" from Count One, on. Df

Mem p. 18. The Amended Complaint has only a typical amount of repetitive allegations between

Counts because they're needed. Calling that "boilerplate claims" is not accurate and is

misleading. The lengthy Amended Complaint is all manuscripted. It was filed to provide Army

much more detail of Plaintiff's claims than the Court's Pro Se EEO complaint, which is mostly boilerplate barebones notice pleading, which Plaintiff commenced this action with. Army would not have obtained dismissal of any of it for any of the reasons it now seeks to dismiss the fulsome Amended Complaint. It would be manifestly unjust to punish Plaintiff for trying to provide Army much more detail when she could have continued with the Pro Se "boilerplate." There are no pleading defects here that cannot be amended not dismissal.

It is also unclear what Army's interest is in painting Plaintiff as so legally incompetent that claims must be dismissed, but too legally competent to deserve any assistance. Plaintiff is entitled to reasonable accommodation anyway which may be substantially the same as Pro Se assistance. Army may not obstruct that. <u>Plaintiff respectfully requests leave to submit reasonable requests if necessary for Pro Se assistance or consideration, or reasonable accommodation of her disabilities.</u>

## II. <u>BACKGROUND</u>

Plaintiff's relevant civilian employment history with Army is set forth in the Preliminary Statement above. Defendant is correct, citing the Amended Complaint, that Plaintiff filed an internal agency EEO complaint in 2016 and filed an appeal of her removal to the Merit Systems Protection Board (MSPB) in 2017 which finally disposed of it June 2018. The EEO complaint was dismissed by EEOC which did not act on it until late 2018 whereupon it dismissed it because this suit is pending.

However, some of what Army cites as MSPB actions are inaccurate or challenged in Count Eight of Amended Complaint and Army is not addressing Count Eight in the instant Motion. Citing MSPB actions that are challenged in the Amended Complaint but not the subject of the instant Motion is confusing, unduly prejudicial, and in some instances inaccurate. MSPB's actions or findings are not precedential or even final on facts and law, they are pending de novo

review and not part of the instant Motion excepting the fact that Plaintiff exhausted a mixed motives case. If that is not supporting dismissal, Army has no reason to plead it, and Plaintiff cannot join those issues in sufficient depth and context in this Objection.

In its "Background" statement, Army degrades Plaintiff and her complaint with statements such as "Plaintiff's 76-page amended complaint details numerous interpersonal conflicts with her coworkers." This is repeated throughout the Counts. It is inaccurate.

First, it is hyperbole and misleading for Army to cite the total number of pages of the Amended Complaint to say there are "numerous interpersonal conflicts with coworkers."

Second, deprivations of civil service rights like removing the employee's duties and imposing discipline without process, several types of discrimination, denial of reasonable accommodation, severe and pervasive harassment, retaliation, reprisal, assaults, a crime-fraud investigation of Plaintiff's supervisors ordered by DOJ with Department of Defense agents, is not mere "interpersonal conflicts" with anyone.

Third, Plaintiff's allegations are about acts by supervisors and superiors, not "coworkers." Coworkers are minimally in the Amended Complaint as comparators regarding supervisor/superiors' misconduct. Even if it were all coworkers, that much "interpersonal conflict" is still an actionable hostile work environment. Amy cannot insulate the supervisors/superiors/decisionmakers with the "cat's paw" doctrine. Army is attempting to get dismissal of every Count by denying that any acts by any supervisors other than Plaintiff's immediate supervisor cannot support a claim unless Plaintiff can prove they were decisionmakers. That positions Army's Motion to Dismiss and this action as ideal for the "cat's paw" doctrine which treats those who influenced a decision as a decisionmaker. This Circuit allows cat's paw for any influencers, even just coworkers. *Vasquez v. Empress Ambulance*

11

*Serv.*, *Inc.*, 2016 BL 280409, 2d Cir., No. 15-03239 (August 29, 2016). This should overcome Army's strategy discussed elsewhere herein of broadly denying any involvement in any action against Plaintiff by any supervisor beyond Plaintiff's immediate and denying much of that supervisor's actions and decisions, even calling allegations about supervisor, allegations about "coworkers." Army is seeking dismissal arguing Plaintiff's lack of facts and proof. The Motion to Dismiss should be denied and Plaintiff allowed reasonable discovery inter alia to support the "cat's paw" doctrine or these remedial claims.

Throughout Plaintiff's employment, Army was subject to a permanent EEOC Compliance Order on reasonable accommodation, disability discrimination, harassment and hostile work environment in Plaintiff's assigned work unit, the New York District of the Corps of Engineers. The Order is published and known to Army's New York EEO chief, Human Resources chief, and Plaintiff's supervisor its Counsel who were in their positions and responsible for that case at the time and at least one of them testified in an action Complainant brought in this Court. *Economou v. Caldera*, EEOC Appeal No. 01983435 (August 5, 1999), https://www.eeoc.gov/decisions/01983435.txt  (Order at end of Decision). Below is the relevant part of the Order that appears to be permanent:

> The U.S. Army Corps of Engineers, New York District, will ensure that officials responsible for personnel decisions and terms and conditions of employment will  abide by the requirements of all Federal equal employment opportunity laws and will not retaliate against employees who file EEO complaints. The U.S. Army Corps of Engineers, New York District, will not in any manner restrain, interfere, coerce, or retaliate against any individual who exercises his or her right to oppose practices made unlawful by, or who participates in proceedings pursuant to, Federal equal employment opportunity law.

> That appears to provide a basis for enforcement of Counts One through Five.

12

III. <u>ARGUMENT</u>

A.   MOVANT FAILS TO MEET ITS BURDEN FOR DISMISSAL OF COUNT ONE OF
     AMENDED COMPLAINT

Count One alleges Army discriminated against Plaintiff on the basis of her disabilities in

violation of the Rehabilitation Act of 1973, 29 U.S.C. § 501, 701, and the Americans With

Disabilities Act of 1990 (ADA), the Americans With Disabilities Act Amendments Act of 2008

(ADAAA), 42 U.S.C. § 12101, and EEOC Regulation 29 CFR § 1630. Section 701 and the

ADAAA and legacy ADA are not pleaded not as the right of action, but for their policy

expressions and standards on "qualifying disability" and "reasonable accommodation" applicable

to Rehabilitation Act claims.

<u>Pleading standard.</u>

Army would hold Plaintiff to a prima facie standard, citing what may be dicta in *Rogers*

*v. Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *5 (S.D.N.Y. Feb. 26,

2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 n.9 (2d Cir. 2015) saying prima

facie is not required but "'may be used as a prism to shed light upon the plausibility of the

claim.'" Df Mem p. 16. That is not directory. Claims under remedial legislation should not be

burdened with pleading with specificity. The "plausibility" standard does not seem as high as

Army makes out:

> [T]he Court is not requiring a universal standard of heightened fact pleading but is
> instead requiring a flexible "plausibility standard" which obliges a pleader to amplify a
> claim with some factual allegations in those contexts where such amplification is needed
> to render the claim plausible.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

And *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), Dismissal appropriate only when it "appear[s]

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."

This claim is governed by the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), standard of consideration of totality of the circumstances and all reasonable inferences therefrom. Direct evidence is not required, neither is pleading it.

Army is advocating a much higher hypertechnical standard for these remedial claims, he EEO claims having their own standard in *McDonnell*.

Albeit, Count One does state a prima facie disability discrimination claim under Section 501 and reasonable accommodation requirements of the ADAAA and EEOC regulations.

Timeliness.

Although Army frames this part of its Motion as failure to plead prima facie, it is actually seeking dismissal of allegations of its failure to provide reasonable accommodation as untimely. To accomplish that, Army runs afoul of the ADAAA and EEOC Management Directive 110 (infra) to Federal agencies, and therefore seeks dismissal of claims under a remedial scheme with unclean hands.

Army's timeliness argument rests on the conduct that in large part resulted in Count One: impermissibly "fragmenting" Plaintiff's claims to avoid the appearance of a pattern, a continuing course of violations, picking off allegations about individual acts as untimely, arguing the rest is insufficient to state a claim, for lack of causal nexus. "Fragmenting" is prohibited by EEOC. EEOC Management Directive 110 (August 5, 2015), Chapt. 5 III, https://www.eeoc.gov/federal/directives/md-110_chapter_5.cfm#_Toc425745228   EEOC directs agencies to proactively identify pattern violations, preserve all related acts as timely if one is timely, in effect, a "continuing violation" doctrine. *Id*. It is well known in employment law that it often takes time for employees to accumulate enough acts to recognize a claim, are not in a

position to force employers to disclose what they are doing and why, and employers may delay and obstruct. Army took seven months even with counsel to allow Plaintiff to file her EEO complaint.

Army's untimeliness argument is made by prohibited "fragmenting," that Plaintiff made only three allegations in the Amended Complaint ¶¶ 184-86, about requesting reasonable accommodation in only two discrete incidents in 2013 and 2016. Df Mem p. 10. That ignores other accommodation allegations and is prohibited "fragmenting." Plaintiff cannot possibly plead every act and all evidence between 2013 and 2016. In 2013 and 2016 Plaintiff made accommodation requests for acute medical needs: a substantial new cardiac diagnosis and heart surgery, an extended hospitalization with substantial new psychiatric diagnoses. Plaintiff alleges her displayed need for accommodation and her express requests ongoing between 2013 and removal in 2017. Army has two interests in disregarding all the requests: fragmenting for a timeliness defense discussed above, and avoiding accountability for repeated unlawful responses.

Army may be disregarding allegations of accommodation requests that did not use the "magic words" "reasonable accommodation," which is not required; or about requests made by employee's family or representatives, which is permitted; or about Plaintiff's obvious need for accommodation. EEOC regulation on reasonable accommodation, 29 CFR § 1630, as amended for ADAAA. Those elements are law, not a fact pleading requirement.

As to facts, Plaintiff cannot plead every act and all evidence, that is the role of discovery. All her allegations about accommodation requests and Army's response sufficiently states a cause of action under Section 501 for failure to accommodate.

Pattern and practice.

Many or all the acts complained of were done closely after protected EEO activity by

Plaintiff. For example, Army commenced ginning up the removal immediately after Plaintiff complained of failure to accommodate, harassment and more to her supervisors and their superiors in the headquarters, and contacted the EEO office. AC ¶¶253, 247-282. In February 2016 her supervisor immediately removed her duties. AC ¶91. March and April 2016 her supervisors with their supervising attorneys from the headquarters disciplined Plaintiff twice and placed her under a baseless rogue unauthorized "background investigation." AC ¶¶150-159. In April and May 2016 Plaintiff informed her supervisor of substantial medical treatment and new psychiatric diagnoses, her supervisors opposed and stalled her accommodation request, and by July were preparing a case to remove her for "medical inability to perform." AC ¶¶136-143. With counsel, Plaintiff obtained some accommodation in July-August 2016, in October 2016 Army served her with two frivolous EEO complaints about her, one personally by the New York EEO Officer responsible for ensuring Plaintiff's EEO rights and accommodation, in November 2016 Army served Plaintiff the removal proposal. This is sufficient to establish a pattern and practice violation by all the allegations (and unalleged acts) about reasonable accommodation of Plaintiff's qualifying disabilities, and all those allegation as timely because at least one is timely on its own.

Even if this Court does not apply EEOC's "continuing violation" theory, Army was required to apply it to its responses to Plaintiff's complaints about unlawful failure to accommodate, to properly document all the accommodation requests and its responses, to assist Plaintiff's EEO complaint to include the pattern of failures to accommodate and disability discrimination. MD 110, supra. Army cannot obtain a dismissal by its noncompliance. That cannot deny Plaintiff an opportunity to make the record that Army argues is lacking, especially because Plaintiff has so far been denied that opportunity for her Rehabilitation Act claim, and not

on the merits, to wit:

1) MSPB excluded most of Plaintiff's evidence for this claim when Plaintiff attempted but failed to upload it from home to the MSPB online system. Much later the presiding MSPB Administrative Judge allowed another attempted but more limited filing with no change to the filing method.[1] Plaintiff was denied any discovery. There was a hearing before this AJ who failed to disclose and recuse on grounds she was one of Army's lawyers, a JAG Officer. AC ¶269. That has at least the appearance of an impermissible conflict of interest. Depending on her separation status[2] and matters she handled, the AJ heard Plaintiff's appeal of Army's adverse action while owing various duties of loyalty to Army as its lawyer, its, officer, or both. See, e.g., *Army Regulation 27-1*;

2) EEOC never acted on Plaintiff's EEO complaint that Army now seeks to dismiss or exclude from this action. EEOC recently dismissed it with no action based only on the filing of the instant suit;

3) Army excluded any statement and evidence by Plaintiff and any interview of her witnesses from its internal "investigation" of her EEO complaint (the one that was dismissed without action by MSPB).

This Objection to a 12b Motion is not an adequate substitute for the denied opportunities for Plaintiff to be heard on the merits of this claim.

---

[1] The MSPB electronic filing system has far more file limitations, uploading timeouts, system unavailability compared to ECF. Accordingly, MSPB is required to provides assistance and alternate filing methods for appellants having difficulties with its electronic system. AC ¶270. That denial was by the same MSPB Administrative Judge discussed above.

[2] After ending Active Duty, all Army members can continue in the Army's reserve, including involuntarily, and even Army retirees remain subject to recall to duty. Army Regulation 601-10.

Merits argument, pretext.

Army seeks dismissal with a circular reasoning that its proffered basis for the removal proves that Plaintiff fails to state a claim that the removal is unlawful, or the proffered basis for the removal is self-proving of its lawfulness. It is not clear where the Due Process would be if the Court made that leap.

There are sufficient facts and evidence to support a reasonable finding that Army's proffered basis for the removal, "medical inability to perform," is a pretext for unlawful disability discrimination in violation of Section 501 of the Rehabilitation Act. By logical deduction from the alleged facts, Army's proffered basis for the removal is that it determined that Plaintiff permanently lost all work capacity for medical reasons starting in the two month period between her May 2016 disclosure of her hospitalization and new diagnoses, and August 2016, maybe July, when Army began creating a case for removal[3] for "medical inability to perform." But Plaintiff did not suffer a catastrophic injury or condition permanently removing all work ability with or without accommodation; she never requested an accommodation consistent with that degree of medical impairment or permanency, she objected to Army's permanent confinement of her to working at home. AC ¶¶165, 178, 223. She worked a 40 hour Mon-Fri week until removed.

Army ignores the allegations of its blatantly contradictory assessments of Plaintiff's performance. All evaluations of her performance in the GS position were "excellent," even without reasonable accommodation. AC ¶42.  Army removed her as medically unfit to perform a

---

[3] August 2016, Plaintiff's supervisor was soliciting a contractor for a letter saying Plaintiff has no work capacity, with no medical exam or consult of Plaintiff's treaters, nor Plaintiff's knowledge or medical release authorization. AC ¶¶207-220

civilian attorney position where reasonable accommodation must be available, while retaining her as an attorney in the more physically and psychiatrically demanding, potentially life-threatening, military service which is exempt from accommodation.[4] AC ¶239.

Army served the removal proposal only six months after Plaintiff disclosed her new psychiatric diagnoses. Army did no performance evaluation in that timeframe, and never did a performance improvement plan for Plaintiff.[5] AC ¶192, Demand for Relief ¶(5)(c). Her supervisors knew of her military attorney duty at Fort Hamilton where one of them works and lives. They approved her leave for it. Plaintiff invited them to observe her performance and speak with her military supervisor to see how pervasive her impairments were and how she worked without accommodation there. They did not.

The above allegations support a reasonable finding that Army did no bona fide analysis of Plaintiff's medical ability to perform, that it is factually erroneous or false, arbitrary and capricious, and a pretext for unlawful disability discrimination in violation of Section 501 (failure to provide reasonable accommodation).

Pretext is also shown by Army's severe harassment of Plaintiff knowingly contributing to or wholly causing the medical conditions that Army proffers as the basis for its failure to accommodate and the removal.

In February 2015, Plaintiff's then-18 year old child was seriously injured on duty with the Army, requiring four substantial surgeries at two hospitals to reconstruct his pelvis, with permanent disability with substantial lifelong medical needs and risks. AC ¶¶92-93. Army

---

[4] As required by uniformed Army Regulations, Plaintiff informed Army of her medical conditions and treatment with full medical documentation. Army made no move to discharge her except a normal age retirement over a year after the civilian removal.

[5] In fact, her supervisors were required to but did not give her an Army TAPES performance evaluation for 2016 and 2017.

Engineer Corps Officers inflicted those injuries by hazing Plaintiff's child then denying him all medical care and discharging him without due medical benefits leaving Plaintiff responsible for all his medical care. AC ¶¶93, 98. Plaintiff had her medical insurance through her GS position. Plaintiff was and is her child's sole caregiver. AC ¶¶95-96.

It is reasonable to find that it was obvious to the Army from the severe prolonged stress of the situations it inflicted on Plaintiff at work and with her family that she needed reasonable accommodation for at least her stress-related cardiac condition that she previously requested accommodation for. Whether or not Plaintiff expressly requested it, the EEOC regulation and ADAAA required Army to explore accommodation with her at that time.

Plaintiff also expressly requested accommodation, informing her supervisor, throughout 2015 and 2016 until removal, of cardiac stress symptoms, having PTSD, feeling depressed, anxious, not sleeping, exhausted, having difficulty concentrating. Plaintiff requested that the unlawful harassment stop and a reasonably quiet workspace at times for concentration and her assigned duties restored so she could practice in her area of competency. It is reasonable to find that Army used Plaintiff's and her child's medical crises and disabilities to deny Plaintiff the reasonable accommodation she needed to continue working to keep her medical insurance for her child. Plaintiff's supervisor provided nothing and prohibited Plaintiff from any mention of her child's injuries calling it "disloyal to the Army." AC ¶96. August to December 2015, Plaintiff asked her supervisor for the Employee Assistance Program and tried to use it but was obstructed. AC ¶¶97, 102, 125. In January 2016, with no factual basis, Plaintiff's supervisor and a command officer in uniform told her she is barred from the entire workplace except her cubicle because the EEO and Human Resources chiefs and their assistants, with whom Plaintiff had minimal or no interaction for two or three years, "feel" Plaintiff is "a violent threat." AC ¶¶103-

20

134, 199. That was false and defamatory and a threat against Plaintiff's employment, medical insurance for her child, and her military security clearance and career, and done to prevent her from getting her employment law duties back. Those Army officials acted with knowledge of Plaintiff's need and requests for reasonable accommodation for the effects of the severe stress she was experiencing. They knew of the severity of the injuries Army inflicted on Plaintiff's child. Those Army officials repeatedly laughed out loud when Plaintiff showed distress at their "violent threat" accusation. AC ¶134. Holding a law license and security clearance as a senior Army military officer and supporting a disabled child was too much at stake for Plaintiff to be engaging in such misconduct in her government job.

By April 2016, Plaintiff was exhausted, having cardiac stress symptoms, and suicidally depressed from the prolonged severe stress of the abuse at work and threats of loss of her employment and medical insurance while caring for her child. Plaintiff had four hospitalizations through May finally undergoing another cardiac procedure and two weeks in-patient which diagnosed the symptoms she had been requesting accommodation for since 2013. AC ¶¶ 162, 191. The hospitalizations impacted her disabled child left alone, worrying about her, having to submit requests for accommodation for her, increasing her stress. Each of those was sufficient to trigger Army's duty to engage in the "interactive process" to find accommodation. It did not. It emailed Plaintiff notice in the hospital that it was taking her next week's pay for "insubordination" and "failure to follow directions." AC ¶167. Plaintiff hired counsel and requested the same type of accommodation as she requested for the 2013 surgery – temporary home telework. AC ¶164. Army responded by threatening her employment, her legal careers, her military security clearance by subjected her to a baseless retaliatory investigation targeting her, questioning at least one of her law license disciplinary authorities outside any OPM background

investigation, making  demands to her reserve commander to end her duty (he refused), telling

him she is the subject of a complaint. AC ¶170. Army's conduct in that circumstance is sufficient

to find that its proffered basis for failing to accommodate and the removal is a pretext for

unlawful disability discrimination against Plaintiff's own disability and her child's, both caused

by unlawful acts by Army.

 The facts make out that the unlawful acts against Plaintiff dramatically increased when

she revealed psychiatric diagnoses. Plaintiff will show that she was allowed to work in that office

for years with her physical disabilities, trusted with a key, working overtime alone, working

alone with U.S. Attorneys, sister agency attorneys, the public and their counsel which all ended

when she revealed psychiatric disabilities. She was then directed to work only at home for the

rest of her employment, banned from working in any Army office. AC¶178. The removal is

focused on the psychiatric conditions.

 Plaintiff was not asking for accommodation to avoid her supervisor who has been

repeating that all through. It simply isn't true, here is evidence and witnesses to Plaintiff many

efforts to be allowed back into the office or other nearby Army offices who offered free space

but a Rule 12b Motion is not the vehicle to prove the truth of allegations or defenses. It is worth

nothing that nothing compelled the removal and it was done very quickly for the subject matter

and there was zero rehabilitation or performance assistance tools afforded Plaintiff. If

management did not want to remove Plaintiff they would not have.

 This allegation is a theme Army repeats through the Counts. It is inaccurate and

misleading. *Plaintiff's* allegations are expressly of acts or failures to act by supervisors,

superiors, not coworkers. Coworkers are alleged only regarding what management did in

response to their actions versus treatment of Plaintiff or directed them to do. Even were there

coworker acts, they would still state a claim under Section 501 which is against Army not individuals. Also, the "cat's paw" doctrine in this jurisdiction treats even nonsupervisory employees who influence a decisionmaker as a decisionmaker. *Vasquez v. Empress Ambulance Serv.*, supra.

Finally, Plaintiff is not seeking redress from this Court for what was done to her child, it is alleged and proffered as proof that at times Plaintiff needed accommodation for stress-related medical conditions, in response to which Army used her child's situation as a tool to harass and inflict stress on Plaintiff, and Army may have again acted to deny its hazing and injuring her child by removing her, proving the proffered basis for the failure to accommodate and the removal is pretextual.

As to pleading "causal nexus" between accommodations requested and disability, that is not the standard for accommodation per the ADAAA. The measure for whether an accommodation is effective for the disability is whether it enables the employee to work to at least the OPM standard for retention in Federal service of minimally sufficient performance. Disability needs change and accommodations may change at any time, any number of times. However, Plaintiff did make allegations supporting such a nexus. There are allegations about various types of accommodation Plaintiff requested in all the discussion above for Count One and see AC ¶¶122, 145, 147, 150, 164, 168, 171, 174-251, 270(e). Those are allegations of accommodation requests made in various ways, and Army's responses, most very close in time to a request, virtually the whole Amended Complaint. It is arranged chronological and with a cause and effect order to make causal nexus apparent. Pleading standard was addressed above. Army would have this Court impose an unduly high pleading standard.

Army generally dismisses an unknown "remaining allegations" of Count One as "essentially boilerplate" and "none of the actions Plaintiff alleges constitute adverse employment

actions." Df Mem p. 18. It is not clear what "actions" in what allegations. Not every action by Army is alleged as an "adverse action" in and of itself and need not be. Removals are indisputably an adverse action for the Rehabilitation Act. Any employer action that culminates in or is used to support removal is part of the removal but still not necessarily an adverse action on its own. Plaintiff alleged many acts by Army that culminated in or were used to support her removal. Army cites inapposite caselaw finding employer acts Plaintiff does not allege to be not adverse actions. Df Mem p. 18-19.

Army also seeks dismissal because Plaintiff did not allege facts to support an allegation that Army did not train its personnel. Df Mem p. 18. An allegation that Army did not train its personnel alleges fact. There is not much more to say for an allegation that something did not happen. The depth Army seeks is for discovery.

The measure of a pleading is whether it gives reasonable notice to permit meaningful response. Army is not saying it is unable to respond. There is no pleading deficiency supporting dismissal of Count One. If more is required it can be done by amendment.

Army cannot meet its burden for a Rule 12b dismissal of Count One. The Motion to Dismiss Count One must be denied.

## B.   MOVANT FAILS TO MEET ITS BURDEN FOR DISMISSAL OF COUNT TWO OF AMENDED COMPLAINT

Army seeks dismissal of the claim that it discriminated against Plaintiff on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* for "failure to state a claim upon which relief could be granted."

Army begins by again attempting to trivialize Plaintiff's allegations as "repeats the same boilerplate claims." This is again incorrect hyperbole and addressed in above.

Army next seeks dismissal on grounds Plaintiff did not plead enough ageist acts. Df Mem

pp. 19-20. Even one act violating any of the EEO statutes is actionable depending on what it is. This is sufficient notice pleading. Plaintiff cannot plead every act and all evidence. What Army wants is discovery.

Army argues untimeliness (Df Mem p. 20) by impermissibly "fragmenting" (EEOC MD 110, Chapt. 5, III) the allegations to take each in isolation to avoid the requirement to treat a series of related acts together and as all timely if at least one act is timely, as discussed for Count One above. Army argues that allegations about removals of Plaintiff's work "as far back as 2014" are untimely because "Plaintiff did not raise this allegation until her 2016 EEO complaint" – fragmenting, see discussion Count One, Timeliness. Army did not assert a timeliness defense and accepted all the allegations and sent them to EEOC. Army is arguing against its own compliance with MD 110. Plaintiff alleges several removals of her duties mostly continuously from 2014 until removal. AC ¶¶76, 99, 111, 131, 136, 141-43,150, 197(a), 238, 240-44, 292(d), 304. It continued until she had virtually no work whereupon Army stopped giving her performance evaluations and annual cash bonuses. This is a continuing course of conduct (see Count One, Timeliness) since the 2014 acts.

Army argues that Plaintiff fails to state a claim about the removal of large amounts and eventually all her duties, arguing that allegations of what it is terming "reassignment" "of certain of Plaintiff's cases" "does not constitute an adverse employment action." "Reassignment of certain" cases is misleading; the number of casefiles was not even a majority of her duties, but with repeated removals of duties it became de facto removal from her position then virtually no duties with no due process then complete removal from her position. There is no bright line on whether it is an adverse employment action for ADEA. This is not a Civil Service Reform Act adverse action. It is governed by the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

standard of consideration of totality of the circumstances and all reasonable inferences

therefrom. Direct evidence is not required, neither is pleading it.

That is not what Army is advocating. The instant allegation is not the only actionable act

of age discrimination in Count Two. Army seems to argue that every act alleged must be

independently actionable to state a claim, which is contrary to the *McDonnell Douglas* "totality"

and all reasonable inferences.

Army cites *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) about trivial

changes in working conditions not being actionable. Plaintiff need plead only a plain concise

statement of her claim, that more than de minimus duties were removed, and she pleaded greater

detail than that. Army misstates her allegations. There are none that Army removed only "certain

of" only "cases." Plaintiff alleges that starting in 2014, her supervisors with the EEO and HR

supervisors took portions of her work sometimes casefiles, mostly the many other duties in

Labor and Employment law. AC ¶¶76, 99, 111, 131, 136, 141-43,150, 197(a), 238, 240-44,

292(d), 304. The exact number of "cases" removed alone is irrelevant to OPM approved Position

Descriptions which describe tasks and percentage of time spent on them. In-house Labor and

Employment law is mostly advice, training, legal opinions, union negotiations, drafting. Army

removed that in toto and her general litigation support, and occasional Real Estate and

Contracting.

Army cites *Mathirampuzha* but it is inappositive, no relevant facts were before the Court,

the case did not involve anything of the magnitude of loss of most then all duties in legal practice

and at most temporarily shifted to unfamiliar practice areas with no training regardless of

requirements of constant competency taking years to develop. Especially in public service where

the highest standard is the goal, it is outrageous to paint this as "mere inconvenience." Without

26

duties, Army gave Plaintiff no performance evaluations for 2016 and 2017 and removed her with the proffered basis of not performing any duties therefore cannot perform duties.

This all contravenes the Civil Service Reform Act and Army regulations preventing duty assignments from being arbitrary and capricious with due process which was not afforded to Plaintiff. Army would also have this Court err by disregarding the substantial psychic harm and career harm from this practice of removing duties to retaliate and oust employees, by dismissing these claims as trivial. Additional facts and evidence as to this whole series of These are facts for discovery.

The same EEO chief, HR chief and Plaintiff's supervisor the New York District Counsel who did this to Plaintiff to create a basis for removal based on discrimination and retaliation allowed or advised the same against the Complainant in *Economou* (supra in the Background section) resulting in an EEOC Compliance Order covering Plaintiff's workplace.

Army argues for dismissal based on an allegation (AC ¶85) that "`two employee casefiles' reassigned from Plaintiff were reassigned because the employees had `filed EEO complaints' about Plaintiff. Df Mem p. 20. Army impermissibly fragments this to argue there is no connection to age discrimination. Army needs to consider it with the allegations about Plaintiff's duties including employment cases being given to the inexperienced untrained youngest brand new lawyer in the office. AC ¶76, 82-85, 91, 138, 141. Another mechanism to take Plaintiff's cases away and give them to the youngest lawyer on the basis of Plaintiff's age was the EEO chief got employees in Plaintiff's cases to create baseless EEO complaints about her legal representation of the agency. There were several reasons the EEO chief was required to dismiss those EEO complaints but she accepted them against conflict of interest rules and against attorney immunity from opposing party claims about representation of one's client, and did that on the basis of Plaintiff's age. The EEO chief and Plaintiff's supervisors then used the existence

of the complaints as reason to remove those cases from Plaintiff and give them to the youngest lawyer, all on the basis of age. This is a level of detail for discovery.

Overall, Army seeks dismissal of Count Two because it pleads only a prima facie case under the ADEA. The measure of a pleading is whether it gives reasonable notice to permit meaningful response. Army is not saying it is unable to respond. There is no pleading deficiency supporting dismissal of Count Two. If more is required it can be done by amendment.

Under the above facts and authorities, Army cannot meet its burden for a Rule 12b dismissal of Count Two. The Motion to Dismiss Count Two must be denied.

## C.   MOVANT FAILS TO MEET ITS BURDEN FOR DISMISSAL OF COUNT THREE OF AMENDED COMPLAINT

Army seeks dismissal of the claim that it discriminated against Plaintiff on the basis of sex[6] in violation of Title VII of the Civil Rights Act of 1964 (Title VII) for "failure to state a claim upon which relief could be granted."

As with Counts One and Two, Army begins by attempting to trivialize this claim by mischaracterizing it as mere "boilerplate." Df Mem p. 21. As discussed above, given that the Court provides Pro Se Plaintiffs a true boilerplate complaint which Plaintiff could have continued with but amended to a fulsome complaint, the "boilerplate" argument serves no purpose for a 12b Motion.

Army argues what it believes about Plaintiff's sex discrimination allegations based on how many there are (Df Mem p. 20) which is immaterial. Army seeks dismissal because Plaintiff has not alleged every act that is part of the alleged act. That level of detail is for discovery. Army does not show how it lacks sufficient notice to respond to this claim. Even if Plaintiff tried to plead more facts it is unknown what amount would satisfy Army.

---

[6] Title VII protects under the term "sex," not "gender."

The pleading is governed by the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), standard of consideration of totality of the circumstances and all reasonable inferences therefrom. Direct evidence is not required, neither is pleading it.

This is not what Army is advocating. With regard to Plaintiff's allegation that "[m]ale management allow[ed] females [to] abuse Plaintiff on account of their sex," Army argues that "Plaintiff does not allege any facts" – apparently meaning none, which is hyperbole. Most of the Amended Complaint is about females abusing Plaintiff. Male management allows it is because the entire management up the first two tier supervisors is male. The GS employees especially the supervisors report to them. It is extremely rare to have a woman in a military command position in Corps of Engineers, there have been perhaps two worldwide, never in New York. Plaintiff alleged the male officers' roles in covering up a violent attack on her, the "violent threat" fabrication by inter alia the very person who committed the violent attack on Plaintiff hat the make officers covered up, their roles in taking her work and the removal, most of the allegations are already cited above in this section.

The allegation Army argues is insufficient states facts with the possible exception of the word "abuse" as a verb. It is acceptable pleading to make a statement of the claim, especially complex EEO claims, with mixed law and fact, mixed fact and conclusions, and plead more supporting facts, as long as there are sufficient facts and law on the whole. To wit, Army also cites the following mixed pleading which contains facts (except the term "defame") given as an example for the conclusion:

> The deputy commander a male used the women to abuse Plaintiff for example saying he, the male, must protect[] women who cry, as justification to remove Plaintiff's duties and defame her.

With regard to Plaintiff's allegation that Army discriminated by "labeling her a violent

threat, a firearms threat with no basis in reality and nothing meaningful done to control or punish actually violent males," Army seeks dismissal because that states "no non-conclusory facts" of sex discrimination. Df Mem pp. 21-22. "Sex discrimination" is the conclusion, this allegation is three raw facts, one of which is a verbatim from two superiors informing Plaintiff of these accusations. This allegation is only one of several about discrimination. Army cites several but argues it's not enough in number (Df Mem p. 22), which is immaterial.

Army also attempts to invalidate this claim by misconstruing *Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000). Army cites its definition of "similarly situated" as "similarly situated in all material respects" but ignores the material condition of "in all *material* respects" *Id.*, 39 [emphasis added]. I.e., disregard differences between employees that would not change the outcome of a comparison of their treatment. Generally, whether or not employees are similarly situated or proper comparators is a mixed question of law and fact, and not amenable to dismissal before discovery because the Defendant disputes the factual basis. "Similarly situated" need not be pleaded as such, it is sufficient to plead the factual basis. It is not a proper basis for a Rule 12b dismissal.

Army misstates Plaintiff's allegations about the very young but male lawyer being given her duties (AC ¶¶ 9, 82) as implausible it can state a claim of sex discrimination because the young male lawyer was hired three years earlier. That assertion is implausible because three years is the entire time their employment overlapped, it's the time from his hire to Plaintiff's removal and the allegations are that her Labor and Employment law work was given to him starting a few months after his hire, until he had it all at one year before she was removed from her position, he had it all. Army just did it gradually to prevent Plaintiff from having a means to stop it until it was done. He already had full L&E work since a few months after his hire, the

supervisor gave him the L&E work of a retiring male lawyer then gave him some of Plaintiff's.

The purpose of the January 2016 "violent threat" incident was to create justification to remove Plaintiff's L&E duties to give them to the young male lawyer because their supervisor and her close associates, the EEO and Human Resources chiefs, wanted Plaintiff removed. The supervisor and command officer expressly told Plaintiff that the sole basis for calling her a "violent threat" was her military service. They never even reported it to anywhere, they were laughing out loud about it. The used it to remove Plaintiff's work, isolate her, remove her. They used it in February 2016 to remove almost all Plaintiff's remaining L&E work and give it to the young male lawyer. They used it in April 2016 to give the young male lawyer Plaintiff's one last Labor matter, a contract negotiation, upon demand of the EEO and HR chiefs. Plaintiff had no L&E work and little else for the next year until her removal.

There is an indisputable enormous disparity in merit between Plaintiff and the young male lawyer; the ages are relevant in this Count to their respective work and legal experience. Army has shown nothing compelling transfer of Plaintiff's duties to him. Those allegations in the Amended Complaint and their timing supports finding, inter alia, that the early age 20s male lawyer replaced the 59 year old female lawyer which can support a finding of sex discrimination (and age).

Army repeats its argument from Count Two about the allegations of what it calls "reassignment of certain of Plaintiff's cases" "does not constitute an adverse employment action" and is not actionable, Df Mem p. 22. The Objection is the same: "Reassignment of certain" cases is misleading; the number of casefiles was not even a majority of her duties, but with repeated removals of duties it became de facto removal from her position the virtually no duties with no due process then complete removal from her position. There is no bright line on whether it is an

31

adverse employment action for Title VII. This is not a Civil Service Reform Act adverse action. It is governed by the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), standard of consideration of totality of the circumstances and all reasonable inferences therefrom. Direct evidence is not required, neither is pleading it. However, this is not what Army is advocating.

The measure of a pleading is whether it gives reasonable notice to permit meaningful response. Army should not be seeking dismissal based on material errors about the pleadings in the Amended Complaint as set forth above. Army is not saying it is unable to respond. If Count Three has pleading defects, they are the type corrected by amendment, not dismissal of this remedial claim.

Army cannot meet its burden for Rule 12b dismissal. The Motion to Dismiss Count Three must be denied.

D.   MOVANT FAILS TO MEET ITS BURDEN FOR DISMISSAL OF COUNT FOUR OF AMENDED COMPLAINT

This Count is a hostile work environment (HWE) claim under Title VII. Army again seeks dismissal for "failure to state a claim upon which relief could be granted" for being "boilerplate" and not pleading facts showing that the alleged acts are on basis of any protected characteristic. None of that is accurate.

The "boilerplate claim" argument has been addressed above. This is an overtly manuscripted Amended Complaint with little repetition and that is immaterial is it amounts to sufficient facts to give reasonable notice of the nature of the claim..

Army's demand is for pleading direct evidence without regard to reasonable inferences, and "fragmenting" the allegations contrary to the time-honored "totality of the circumstances" and all reasonable inferences standard under *McDonnell Douglas.*

"Motivated by any protected characteristic."

Army again argues that Plaintiff does "not plausibly allege that the conduct she complains of was motivated by any protected characteristic." Df Mem p. 23. Army does not appear to contest that Plaintiff is a member of multiple protected classes alleged in this Count. AC ¶13. On Counts One and Three, Army asserts that pleading an act was on account of a protected class is "conclusory," fails to state a claim. Df Mem p. 19. For this Count Four, Army argues dismissal for lack of such an allegation. Df Mem pp. 21-22. How does it matter if an allegation that an act was on account of membership in a protected class is "conclusory" as a description of the claim, in fact, as a prima facie case, if reasonable facts are also pleaded, particularly these claims subject to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)?

The gravamen of this lengthy detailed Amended Complaint is less favorable treatment of Plaintiff by Army on the basis of various of Plaintiff's protected characteristics. What Army argues here is tantamount to "the Amended Complaint doesn't say what it says." Or Army is demanding that Plaintiff plead each actor's intent, when the standard is reasonable inference of intent. Overall, there is no requirement of the specificity Army urges in this remedial claim.

"Conduct that is objectively severe or pervasive."

HWE claims are well-suited to the *McDonnell Douglas* standard of consideration of totality of the circumstances and all reasonable inferences therefrom. Direct evidence is not required, neither is pleading it. This is not what Army is advocating. Plaintiff does not have to prove in pleading that each alleged act is "objectively severe or pervasive," this standard applies to the whole of the environment, under the "totality of the circumstance."

That is not what Army is advocating. Army is advocating specificity, pleading every act, every underlying act, disregard of all reasonable inferences. The number of allegations is not dispositive of anything. There are sufficient facts in this lengthy detailed Amended Complaint to state a HWE claim.

The measure of a pleading is whether it gives reasonable notice to permit meaningful response. Army is not saying it is unable to respond. There is no pleading deficiency supporting dismissal of Count Four. If more is required it can be done by amendment.

It is Army's burden to plead a consistent clear sound basis for a Rule 12b dismissal. Army cannot meet its burden for a Rule 12b dismissal of Count Four. The Motion to Dismiss Count Four must be denied.

E.   MOVANT FAILS TO MEET ITS BURDEN FOR DISMISSAL OF COUNT FIVE OF AMENDED COMPLAINT

Count Five alleges Army retaliated against Plaintiff for engaging in protected Equal Employment Opportunity activity in violation of Title VII. Army asserts that this claim must be dismissed for "failure to state a claim upon which relief could be granted."

Army seems to misunderstand the standard for this claim as requiring proof of discrimination as an underlying cause, ergo one must be a member of a protected class to suffer actionable "discrimination" in violation of Title VII. Referenced throughout these arguments, Army concedes that Plaintiff is a member of several protected classes, but the anti-retaliation provision of Title VII protects engagement in protected EEO activity with or without membership in a protected class. For example, it is available to "allies" who file a complaint or testify about an EEO violation against another. It is unclear what Army is actually arguing here. It is Army's burden to argue for dismissal clearly and intelligibly and the Court should not grant the draconian remedy of dismissal because of that.

Army is again attempting to trivialize Plaintiff's allegations about its supervisors and attempt to reframe this action into Plaintiff her coworkers which is not at all his case. This repeated argument really is far off the mark give how clearly the complaint fractionally mentions a coworker and does so only explaining that he supervisors or superiors treated them more

favorable than Plaintiff or how management directed them. There is no reasonable way to

misconstrue that into a complaint of coworkers harassing Plaintiff. Plaintiff explained this above

in the Preliminary Statement and prior Counts.

The measure of a pleading is whether it gives reasonable notice to permit meaningful

response. Army is not saying it is unable to respond. There is no pleading deficiency supporting

dismissal of Count Five. If more is required it can be done by amendment.

Under the above facts and authorities, Army cannot meet its burden for a Rule 12b

dismissal of Count Five. The Motion to Dismiss Count Five must be denied.

F.   MOVANT FAILS TO MEET ITS BURDEN FOR DISMISSAL OF COUNT SIX OF
     AMENDED COMPLAINT

Count Six alleged that Army committed reprisal against Plaintiff for her protected

communications, in violation of the Whistleblower Protection Enhancement Act (WPEA), 5

U.S.C. § 2302(b)(8). Army asserts that this claim must be dismissed for "failure to state a claim

upon which relief could be granted."

First, Army is erroneously conflating this and the EEO retaliation claim in Count Five,

calling both by the Title VII term "retaliation" and citing the Title VII basis of "protected

activities." WPEA addresses *reprisal* for *protected communications* distinct from Title VII

retaliation.

Second, Army seeks dismissal of this claim on two grounds.

(1)      § Section 2302(b)(8) addresses reprisal by "[a]ny employee who has authority to
         take, direct others to take, recommend, or approve any personnel action." Df Mem
         p. 27.

(2)      "Plaintiff does not plausibly allege that the Army took a qualifying personnel
         action against her as a result of those disclosures[7] … 'Personnel action' is defined

---

[7] The standard is not merely "disclosures," it is "protected communications," but Army does not seem to
be arguing that Plaintiff failed to make such.

to include various actions including 'any . . . significant change in duties, responsibilities, or working conditions." 5 U.S.C. §§ 2302(a)(2)(A); Df Mem p. 27.

The first argument is based on an unduly narrow characterization of the Amended Complaint inaccurately suggesting it alleges violative acts by only two persons who are not Plaintiff's assigned supervisors. The discussions herein about other Counts address Army's other similar attempts to shield its supervisors by frankly misstating allegations to say they are about "coworkers" when they are not, they are expressly exclusively about supervisors and superiors. No matter what act may be alleged as committed by a coworker, the coworkers are alleged only comparing how supervisors/superior treated them or responded to their conduct compared to their treatment of Plaintiff. The acts complained of as the agency's agents are its supervisors/superiors'. This is just a plain reading of the allegations.

Army does not concede that Count Six alleges at least one "qualifying personnel action" based on protected communications.[8] Df Mem p. 28. Army posits that even if there is one, Plaintiff cannot prove a causal nexus because she doesn't know who made decisions. Id. That is inaccurate. Plaintiff has evidence, Plaintiff is a witness, Plaintiff knows how that workplace functioned, which was scrupulously as a team among the supervisors, and the two cited by Army (Df Mem p. 28) were closely located with and very close by most of most days with Plaintiff's direct supervisor. Plaintiff is confident testifying with evidence how they colluded to remove her. It was in fact their role, this is an atypical case, because the most involved supervisors in fact are eachother's advisors in employment matters: Plaintiff's supervisor is the lead counsel advising the EEO and Human Resources chiefs who advise her and each other. The latter two made complaints trying to remove Plaintiff and plainly got her supervisor to remove her duties. Much

---

[8]Id.

of the removal is documented with them using the processes. Even before discovery there is no plausible position that they were not involved in numerous decisions about actions against her. Army positions this as ideal for the "cat's paw" doctrine which treats those who influenced a decision as a decisionmaker. This Circuit allows cat's paw for any influencers, even just coworkers. *Vasquez v. Empress Ambulance Serv*., *Inc*., 2016 BL 280409, 2d Cir., No. 15-03239 (August 29, 2016). This should overcome Army's strategy discussed elsewhere herein of broadly denying any involvement in any action against Plaintiff by any supervisor beyond Plaintiff's immediate and denying much of that supervisor's actions and decisions.

This is not appropriate for a Rule 12b dismissal. It is a mixed question of law and fact requiring discovery. It requires discovery because it allows Plaintiff access to proof she would likely not otherwise have about the acts against her that Army is seeking to deny her through its instant Rule 12b Motion based on her lack of those facts and proof.

Army alleges a pleading deficiency based on an allegation of reprisal by two supervisors (AC ¶67), the alleged deficiency being that "Plaintiff does not allege that these individuals actually made the decision to remove Plaintiff, or that they had the authority to do so." Df Mem p. 28. As set forth above, that invites the "cat's paw" doctrine. There is no requirement to please authority in these Federal sector employment rights claims. The agency is always responsible even for an "outside scope" action, this isn't a tort claim. Authority is a mixed law and fact issues not required in notice pleading.  Reprisal complaints do not require allegations of who made a decision to commit reprisal or who "actually" made the decision; decisions are thoughts or intent requiring discovery and trial. A violation committed with another's influence is possible in Federal employment working in teams and relying on staff. As common with all employment rights statutes, violations committed with another's influence is actionable. WPEA does not state

what type of authority is required to enforce an offending decision like removal. That and the type of authority a person has are mixed law-fact questions requiring discovery and trial. Plaintiff alleges numerous other violations besides removal, or leading to it, that is the entire Amended Complaint. This is notice pleading, not every act can be pleaded, but the details of Army's discussion of the allegations shows they fairly apprise Army of the bases of this claim.

Army is also asserting it is not responsible if even senior employees and supervisors violate WPEA if they did not have authority to do the violative acts. Violations are by definition unauthorized. This circular paradigm would eliminate all responsibility by declaring no one, not even the senior leaders and supervisors Plaintiff alleges, authorized to commit the bad act. There is no sufficient pleading to support that.

Plaintiff intends to show that Mss. Capowski and Deptula were fairly high ranking, peers of Plaintiff's direct supervisor Lee. Even without discovery Plaintiff has evidence that Lee encouraged them to direct Plaintiff even her legal work daily the majority of her tenure, because as the local employment lawyer, Plaintiff worked with them, their staffs on myriad issues, educating and advising them, but they did want honest legal advice. The allegations that these persons committed reprisal does not imply they acted alone. They together had the duties of managing Plaintiff's personnel actions, of removing her. This is an unusual case where the EEO and HR chiefs were close with Plaintiff's supervisor who is their lead attorney, so they all advise eachother and process personal actions together. What is most unusual is Plaintiff having been the employment lawyer assigned to advise all of them. Capowski had control of the office EEO functions from Plaintiffs' reasonable accommodation requests to numerous acts of harassment to removing Plaintiff as EEO counsel. AC ¶28. Deptula was Human Resources chief who participated in the harassment, wrote support for the removal, was responsible for processing the

removal.  AC ¶32. All this was done with in "consultation," "collusion" or "conspiracy" with eachother and with Plaintiff's assigned supervisors Lee and McAndrew, their superior lawyers, and the military command officers leading the organization at various times (they are dscribed above with citation to the allegation). Mss. Capowski, Deptula and Lee worked closely together daily for decades.

Army also asserts "Plaintiff does not plausibly allege that the Army took a qualifying personnel action against her as a result of those disclosures." The term is "protected communications." As set forth above, *Ashcroft* describes the plausible standard as not as high as Army seem to be arguing for. From what Army is arguing Plaintiff cannot determine if she met it met and if not why not. If Plaintiff alleged facts for the elements it should be plausible. This is plausible allegations regardless of believable claim.

There is no requirement to allege reprisal under the remedial WPEA in any greater specificity for notice pleading. There is no pleading deficiency supporting dismissal of this WPEA reprisal complaint. If more is required it can be done by amendment.

The measure of a pleading is whether it gives reasonable notice to permit meaningful response. Army is not saying it is unable to respond Under the above facts and authorities, Army cannot meet its burden for a Rule 12b dismissal of Count Six. The Motion to Dismiss Count Six must be denied.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should DENY the Motion to Dismiss Counts One through Six of the Amended Complaint. Plaintiff withdraws Counts Seven and Nine without

prejudice to renew Count Nine after meeting exhaustion requirements.

Dated: _____

BY PLAINTIFF, PRO SE,


_____
SUSAN V. WALLACE
8201 4th Avenue, Apt. 3J
Brooklyn, New York 11209
cell (860) 655-6024
svwhome@yahoo.com