**USDC-SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC#:**
**DATE FILED:** 9/30/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUSAN V. WALLACE,

        Plaintiff,

        v.

DR. MARK T. ESPER, *Secretary,*
*Department of the Army,*

        Defendant.

---

No. 18-CV-6525 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Susan V. Wallace, an attorney proceeding *pro se*, brings this action against Dr. Mark Esper, in his official capacity as Secretary of the United States Department of the Army, where Wallace was formerly employed. She asserts claims for: disability discrimination, pursuant to the Rehabilitation Act, 29 U.S.C. §§ 501, 504, 701, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; age discrimination, pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621; sex discrimination, retaliation, and hostile work environment, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000(e) *et seq.*; and whistleblower reprisal, pursuant to the Whistleblower Protection Enhancement Act ("WPA"), 5 U.S.C. § 2302(b)(8). She also asserts a claim seeking judicial review of a decision of the Merits Systems Protection Board ("MPSB") affirming her removal from the Army, pursuant to the Civil Service Reform Act, 5 U.S.C. § 7703(b)(2). Except as to the MPSB claim, Defendants move to dismiss the Amended Complaint ("Complaint") in its entirety. For the following reasons, the motion is granted in part and denied in part.

# FACTUAL BACKGROUND[1]

Wallace was born in 1958. She has over 20 years of experience as an attorney working in private practice on mostly employment and labor law issues, and over 17 years of experience as a Commissioned U.S. Army military officer and lawyer (otherwise known as a Judge Advocate General Officer or "JAG"). Beginning May 6, 2010, she was employed as an Excepted Service General Attorney within Defendant's U.S. Army Corps of Engineers ("USACE") unit. Wallace was removed from that position on April 15, 2017, for an alleged "medical inability to perform." Compl. ¶ 9. She nonetheless continued to serve as a JAG officer until June 2018, at which point she retired, having attained the maximum service age of 60 years.

In a nutshell, Wallace's 76-page Complaint alleges that well over a dozen of her USACE colleagues and supervisors engaged in a vast array of discriminatory conduct towards her from 2011 until she was removed in 2017. The allegations are not presented in chronological order and many do not specify when the relevant events occurred. They are thus reviewed below by their subject matter.

## I. Allegations of Disability Discrimination

Wallace alleges that throughout her time at USACE, her immediate supervisor, Loraine Lee, and other USACE employees failed to reasonably accommodate her disabilities and discriminated against her because of them. Compl. ¶ 184. Specifically, in 2012, Wallace informed Lee that she needed "reasonable accommodation" due to her cardiac arrythmias for which she was "under medical care," and which she claims were being exacerbated by the workplace. *Id.* According to Wallace, Lee did not accommodate or "engage" the request. *Id.*

---

[1] The facts in this section are drawn from Plaintiff's Complaint and are assumed to be true for the purposes of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

In Spring 2013, Wallace underwent heart surgery for a "dangerous form of atrial fibulation" and again requested reasonable accommodation in the form of "home telework." *Id.* ¶ 185. Lee allegedly denied the request, which Wallace claims "forced [her] to return to the office too early," causing her to suffer a "recovery relapse with a permanent complication." *Id.* ¶ 186. Despite the relapse, Wallace maintains that Lee still refused to accommodate her request for reasonable accommodation. *Id.* "A few months" later, Lee allegedly granted "liberal home telework" to "an age 20s attorney to afford her postpartum time at home." *Id.* ¶ 187. After complaining to Lee about this purportedly "disparate treatment," Lee offered Wallace "a couple of days of home telework, now that [Wallace] no longer needed it." *Id.*

In 2015, Wallace claims that she requested "access to programs like the Employee Assistance Program . . . and other reasonable accommodations for her physical and mental stress" resulting from alleged "severe and pervasive" harassment that she was experiencing in the workplace, as discussed below. *Id.* ¶ 190. Again, Wallace asserts that Lee ignored her requests, and the harassment continued unabated. *Id.*

Wallace further alleges that the stress from the purported workplace harassment led to her being hospitalized three times in March and April 2016. *Id.* ¶ 144. During this period, she "repeatedly asked" Lee for reasonable accommodation, again to no avail. *Id.* ¶ 145. Moreover, although Wallace provided Lee with documentation regarding her medical conditions, Lee allegedly denied knowing about any of Wallace's recent illnesses or injuries. *Id.* ¶ 147. This purportedly resulted in her being denied Workers' Compensation. *Id.*

In May 2016, Wallace was again hospitalized "as a result of [work conditions]" and underwent another cardiac procedure. *Id.* ¶ 162. She was also diagnosed for the first time with bipolar disorder and as suicidal, in addition to her preexisting diagnoses of depression, anxiety,

and PTSD. *Id.* Accordingly, by July 2016, Wallace had "been out of work on sick leave" for most days since March. *Id.* ¶ 171.[2] At that time, she again sought reasonable accommodation, including home telework. *Id.* Lee allegedly "refused to engage on reasonable accommodation" and "demanded unaccommodated return to the office." *Id.* Wallace nonetheless alleges that she was allowed to "home telework" during July and August. *Id.* ¶ 176. But she claims that Lee denied that the permission to telework was a reasonable accommodation, stating that "she could end it any time." *Id.* ¶ 176. In fact, Wallace asserts that in August 2016, Lee directed her to "violate her medical orders for temporary home telework and return to the office immediately or face discipline," including the possibility of removal. *Id.* ¶ 177.

At some point thereafter, Defendant allowed Wallace to "return to home telework," but she claims that it was no longer temporary, i.e., with the opportunity to work in the office. *Id.* ¶ 178. As a result, Wallace contends that she was now "trapped" at home and that this lasted until her removal. *Id.* ¶ 232. During this time, Wallace claims that Lee and others "misus[ed] [her teleworking] to isolate Plaintiff, cut her off from information and records, harass her all through the day, then accuse her of incompetence." *Id.* ¶¶ 183, 230. When Wallace requested to be brought back into the office with certain accommodation, Lee allegedly "refused everything." *Id.* ¶ 233.

## II. Allegations of Age and Gender Discrimination

Wallace further asserts that she experienced various incidents of discrimination at USACE based on her gender and age. In 2014, Lee and her supervisor, Maureen McAndrew, allegedly made overt comments "to and around Plaintiff" about their intent to get rid of "old" lawyers and

---

[2] Wallace also states that she had been out of work in July 2016 due to "military duty and suspension." *Id.* 171. The details of the military duty are not alleged. While Wallace claims that the USACE Deputy Chief Counsel imposed some form of "suspension" on her that took a week of her pay, the precise nature and purpose of the suspension is unclear. *Id.* ¶ 167.

hire "'only' the youngest civilian lawyers possible[.]" Compl. ¶ 80. Later that year, Lee and McAndrew allegedly: (1) hired a male attorney in his early 20s to "replace the retiring male labor and employment counsel," *Id.* ¶ 82; and (2) started giving Wallace's labor and employment law work to the "least experienced male attorney in the office," including "two employee casefiles . . . on the pretense that these employees filed EEO complaints about [Plaintiff]." *Id.* ¶¶ 83, 85.

In addition, Wallace contends that by "about late 2014 or early 2015," Lee and McAndrew were announcing that the USACE Chief Counsel's policy is to hire "only young attorneys." *Id.* ¶ 86. Lee and McAndrew also purportedly commented during this time that Defendant "does not need old lawyers," "is hiring only young lawyers," and "the younger, the better." *Id.*

In early February 2016, Lee allegedly reassigned Wallace's remaining labor and employment work "to the youngest and least experienced attorney in the office[.]" *Id.* ¶ 91. In August or September 2016, Wallace claims Lee stopped assigning her litigation work altogether. *Id.* ¶ 225. By the time of her termination in April 2017, Wallace alleges that all of her work had been given to an "early age 20s totally inexperienced untrained male." *Id.* ¶ 292(d).

**III. Allegations of Retaliation and Whistleblower Reprisal**

From 2011 until she was removed, Wallace asserts that she reported "serious misconduct" committed by her supervisors at USACE, including "violations of [e]thics rules, potential crimes, [and] unlawful discrimination"—in addition to "retaliation and whistleblower reprisal against her" for that reporting. Compl. ¶ 47. She contends that she did so in writing in 2012, 2013, 2016. *Id.* ¶ 48. Although not entirely clear, the Complaint suggests that those reports of misconduct were made in the form of EEO complaints, which Defendant allegedly ignored, as well as internal complaints to USACE officials, including Defendant's Ethics Counsel. *Id.* ¶¶ 51–63.

Wallace summarily describes the Complaint's barrage of allegations concerning the

conduct of other colleagues over time as "retaliation/reprisal" throughout. The specific incidents that she labels as "retaliation/reprisal" are as follows:

- At some unspecified time after August 2015, Lee and others started a campaign to paint Wallace as a "violent threat" in order to encourage her to quit or to "fabricate [a] justification to remove her." *Id.* ¶¶ 103, 107.

- In February 2016, after Wallace emailed Defendant's Chief Counsel complaining about discrimination and harassment that she was experiencing, Lee informed Wallace that, pursuant to the Chief Counsel's directive, Wallace was not permitted to complain to the Chief Counsel and must instead do so through other "Government complaint avenues." *Id.* ¶ 137.

- In early March 2016, after Wallace filed a Federal Workers' Compensation claim, Lee submitted a response in which she denied any knowledge that Wallace was ill. *Id.* ¶ 147.

- In mid-March 2016, Lee asked Wallace's co-workers if they would "say they fear violence from Plaintiff." *Id.* ¶ 148.

- In mid-2016, Estelle Capowski, a supervisory EEO Officer, had her own superior, Earl Newton, harass Wallace with "another baseless EEO complaint" asserting that Wallace was creating a hostile work environment for Capowski. *Id.* ¶ 63(f).

- In May 2016, when Wallace was discharged from a hospital after having had a cardiac procedure, the USACE Deputy Chief Counsel emailed her personally his decision upholding a previously imposed one-week suspension of Wallace's pay. *Id.* ¶ 167.

- In June 2016, when Wallace was on military duty, USACE superiors called her military commander demanding that she return for "emergency work." *Id.* ¶¶ 200-201.

- In 2017, after Wallace was removed, she was initially refused severance pay. *Id.* ¶ 249.

Separately, Wallace alleges that, at some unspecified time, she reported that Diane Deptula, a supervisory Human Resources Officer "made a false statement under penalty of perjury to get . . . a [v]eteran[] removed by putting her on a disability pension that she did not qualify for[.]" *Id.*

6

¶ 66. Deptula allegedly became "retaliatory by giving false statements about Plaintiff being incompetent and helping to remove her duties." *Id.* ¶ 67.

## IV. Allegations of a Hostile Work Environment

Wallace further alleges that she was subjected to a hostile work environment by her colleagues based on the foregoing allegations of discrimination and retaliation, as well as other general allegations of harassment. For example, Wallace asserts that Capowski misused her EEO position "to induce employees to file baseless complaints" about Wallace and defamed her in "disparaging emails" Compl. ¶ 63(a), (c). She also claims that three colleagues "made several violent profane attacks" on her including engaging in "raging yelling tirades" and "[c]yberbullying by profane demeaning emails . . . saying 'shut up' or 'go away'." *Id.* ¶¶ 68, 133. Wallace similarly alleges that when she was teleworking in the Fall of 2016, Lee would "electronically harass" her, "demanding greater accountability than from any other subordinate," and forcing Wallace to look at her screen "every second to comply with Lee's directive for immediate response to anything." *Id.* ¶ 183.

In addition, Wallace contends that the following alleged incidents of harassment contributed to a hostile work environment:

- At an unspecified time "[e]arly in her employment," after emailing Capowski "about the [e]thics rule prohibiting use of official position to endorse private entities," Capowski initiated a "unilateral raging profane tirade at plaintiff." *Id.* ¶¶ 61, 63.

- In 2012, Capowski threw a chair at Wallace in the office of the Deputy Commander while others were present. *Id.* ¶ 63.

- In November 2015, after Wallace had shared with colleagues that her son had been "hazed, denied medical treatment, and summarily discharged from the Army" Lee told Wallace to "never discuss her son because it is 'depressing' and 'disloyal to the Army.'" *Id.* ¶ 96.

- In April and May 2016, Lee and McAndrew physically attacked Wallace in the New York office by "forcing her forward into rooms, locking her in with Lee at the door to prevent exit while McAndrew advanced on Plaintiff backing her to the wall/furniture . . . and demanding [to know] what she told federal law enforcement agents about them." *Id.* at ¶160.

## PROCEDURAL BACKGROUND

Wallace asserts that in "[e]arly February 2016" she contacted the EEO asking to file a complaint. Compl. ¶ 253. She maintains that "[f]rom February 2016 to February 2017," she "complied with USACE's internal EEO complaint process," alleging claims of age, sex, gender, and disability discrimination, retaliation, and whistleblower reprisal. *Id.* ¶ 13. USACE purportedly "forwarded the casefile" to the U.S. Equal Employment Opportunity Commission ("EEOC") in February 2017. *Id.* Elsewhere the Complaint alleges that, in 2016, Wallace filed a complaint of whistleblower reprisal to the U.S. Office of Special Counsel which "declined further action because Defendant had not yet removed Plaintiff." *Id.* ¶ 14.

Wallace states that she timely appealed her April 2017 removal to the MSPB which affirmed the removal decision on June 19, 2017. On July 19, 2018, she filed the Complaint in this action, which she amended on October 16, 2018. At some unspecified time thereafter, the EEOC dismissed Wallace's complaint before it in light of Wallace having filed this suit. Pl's Mem. Opp. at 4. On February 22, 2019, Defendant moved to dismiss all of Wallace's claims, except for her claim for judicial review of the MSPB's decision affirming her termination, pursuant to the Civil Service Reform Act, 5 U.S.C. § 7703(b)(2), which remains pending.[3]

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts

---

[3] On April 17, 2019, Wallace withdrew two of the claims in the Complaint, brought pursuant to the Family Medical Leave Act, and the Uniformed Services Employment and Reemployment Rights Act. *See* Dkt. 31.

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). When considering a Rule 12(b)(6) motion, courts "accept[ ] plaintiffs' plausible allegations as true and draw[ ] all reasonable inferences in their favor." *Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017). Although Wallace is proceeding *pro se*, because she is "an experienced attorney . . . the Court is not obligated to read [her] pleadings liberally." *Chira v. Columbia Univ. in New York City*, 289 F.Supp.2d 477, 482 (S.D.N.Y. 2003).

## DISCUSSION

### I. Disability Discrimination Claims under the Rehabilitation Act and ADA

First, Wallace's ADA claim must be dismissed because, as a federal employee, the ADA does not provide her with a cause of action. *See Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir.1998) (noting that a federal employee has "no remedy for employment discrimination under the ADA."). Only Wallace's claim under section 501 of the Rehabilitation Act, which expressly applies the same standards as the ADA, will be considered. *See* 29 U.S.C. § 791(f).[4]

#### A. Discrimination Based on Failure to Reasonably Accommodate

Wallace has adequately stated a claim pursuant to the Rehabilitation Act on the grounds

---

[4] To the extent Wallace's disability discrimination claim is premised on a violation of the Rehabilitation Act under § 504, it too is dismissed because "section 501 provides the sole remedy for . . . a federal employee." *Rivera v. Heyman*, 157 F.3d 101, 104 (2d Cir. 1998).

that she was unlawfully denied reasonable accommodation for her disabilities. To make out a *prima facie* case of disability discrimination based on an employer's failure to accommodate, a plaintiff must establish that (1) she has a disability; (2) the defendant had notice of the disability; (3) she could perform the essential functions of the job with reasonable accommodation; and (4) the Defendant refused to make such accommodation. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006).

As a threshold matter, Defendant is correct that the alleged events occurring in 2012 and 2013—namely, that Wallace underwent heart surgery and that her request for reasonable accommodation was "flatly refused," Compl. ¶¶ 184–86—are time-barred for the purposes of her reasonable accommodation claim. The Rehabilitation Act requires that a litigant timely exhaust available administrative remedies, in accordance with applicable EEOC guidelines, before filing an action in federal court. *See Lucenti v. Potter*, 432 F. Supp. 2d 347, 356 (S.D.N.Y. 2006). For a federal employee, like Wallace, these guidelines require, among other things, that the "aggrieved person . . . initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (2010). "The 45–day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001). Wallace acknowledges that she only "complied with Defendant's internal EEO complaint process" beginning in February 2016.[5] Compl. ¶ 13. Consequently, she cannot successfully assert a claim for reasonable accommodation based on Defendant's alleged conduct

---

[5] The Court assumes that this assertion means that Wallace initiated contact with a counselor at that time to complain about the harassment she was purportedly experiencing.

in 2013.[6]

With respect to Wallace's allegations that she was denied reasonable accommodation in 2016—after she had another heart procedure, and was diagnosed with bipolar disorder, PTSD, suicidal depression, and anxiety—Defendant concedes that these events are not time-barred. *Id.* ¶¶ 191, 193. Defendant also does not contest that any of the *prima facie* elements of a reasonable accommodation claim are met with respect to these events.

Defendant nonetheless argues that the claim must be dismissed because Wallace does not explain "how home telework would accommodate [her] disabilities, other than to suggest that interacting with her supervisor and coworkers caused her 'severe stress and exhaustion.'" Def.'s Mem. at 10. But a reasonable accommodation may include such an "alteration of the facilities in which a job is performed." *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009). Moreover, the reasonableness of an employer's accommodation is a 'fact-specific' question that is typically not resolved at the motion to dismiss stage. *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (noting that reasonableness of an employer's accommodation "often must be resolved by a factfinder"); *Ross v. State of New York*, No. 15-CV-3286 (JPO), 2016 WL 626561, at *7 (S.D.N.Y. Feb. 16, 2016) (finding defendant's argument that plaintiff's requested accommodation was not reasonable to be more appropriate for summary judgment).

---

[6] For the same reason, Wallace's allegation that she was denied reasonable accommodation when Defendant did not make the Employee Assistance Program for mental health available to her, after she requested it "through the second half of 2015," Compl. ¶ 102, cannot form the basis of a reasonable accommodation claim. Nor can Wallace establish that this event and the 2013 events form the basis of such a claim under the continuing violation doctrine. Under this doctrine, events outside the limitations period may still be considered timely "as to any incident of discrimination" that occurred "in furtherance of an ongoing policy of discrimination." *Chin v. Port Auth. Of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir.2012). Here, however, Wallace has clearly alleged at least three separate denials of reasonable accommodation—one in 2013, one in 2015, and one in 2016. Compl. ¶¶ 184–86, 191, 193. Such denials are discrete acts that cannot amount to a continuing violation. *See Francis v. Wyckoff Heights Medical Center*, 177 F. Supp. 3d 754, 776 (E.D.N.Y. 2016) (noting that "an employer's denial of a requested accommodation does not give rise to a 'continuing violation,'" because it is a "discrete employment action") (citing *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 134 (2d Cir. 2003)).

11

Here, Defendant has not met its "weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor." *Goonan v. Federal Reserve Bank of New York*, 916 F.Supp.2d 470, 482 (S.D.N.Y. 2013). Defendant's motion to dismiss Wallace's claim for failure to reasonably accommodate her disabilities, to the extent based on the allegations concerning Defendant's conduct in 2016, is thus denied.

### B. Discrimination Based on Adverse Employment Action

By contrast, Wallace's Rehabilitation Act claim, to the extent premised on the theory that she experienced adverse employment actions because of her disabilities, does not satisfy Rule 12(b)(6). To state a *prima facie* claim of such disability discrimination under the Rehabilitation Act, a plaintiff must plausibly allege: (1) that she is an individual with a disability within the meaning of the statute, (2) that she was otherwise qualified for the position or benefit denied, (3) that she suffered an adverse employment action because of her disability, and (4) the program sponsoring her position receives federal funding. *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 295 (S.D.N.Y. 2014) (citing *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003)). Defendant only addresses the third element, and the Court assumes for purposes of this motion that the remaining ones are satisfied.

Defendant first argues that Wallace has not plausibly alleged that she suffered an adverse employment action. The Court disagrees. An adverse employment action is one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). Termination is the more obvious example, but "significantly diminished material responsibilities" may also qualify. *Id.* Although Wallace's opposition brief does not clearly articulate that her termination constituted an adverse action for purposes of her ADEA claim, it plainly does. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.

12

2003). Wallace's assertion that she was subjected to an "outright" reassignment of "all her duties" also constitutes an adverse action. *See* Compl. ¶ 292(d). Specifically, Wallace claims that in early February 2016, Defendant gave her labor, employment, and ethics work "for the IT unit" to a "young 20s male," *id.* ¶ 91; and that by August or September 2016, Wallace's supervisor replaced all of her "officially assigned duties in her practice areas with unfamiliar work she was not . . . trained in," *id.* ¶ 197, and that she stopped receiving litigation work altogether, *id.* ¶ 225.[7] Courts in this Circuit have held that similar allegations of reassignment of work or lessened responsibilities constitute adverse employment actions. *See Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 789, 790–91 (2d Cir. 1997) (holding that the downgrading of duties and responsibilities, even absent an official change in an employee's position, may constitute an adverse employment act); *Lorenzo v. St. Luke's-Roosevelt Hosp. Ctr.*, 837 F. Supp. 2d 53, 67 (E.D.N.Y. 2011) (concluding that the removal of the plaintiff's so-called credentialing duties was "an adverse employment action—a functional demotion that stripped her of the main duty of her job.").[8] Wallace has thus alleged that she experienced two adverse employment actions: the reassignment of her litigation work, and her eventual termination.

Defendant is ultimately correct, however, that Wallace has not adequately alleged that these adverse employment actions were taken because of Wallace's disabilities. Wallace's assertions that she experienced them in part because of her disability are conclusory. She does not

---

[7] Wallace also claims that Defendant gave her "labor and employment law and [e]thics work for New York[] to the probationary young and least experienced male attorney in the office," beginning in September 2014, *id.* ¶ 83. That event is not considered in the adverse action analysis because it is outside of the limitations period.

[8] Defendant cites *Mathirampuzha v. Potter*, for the proposition that "a mere . . . alteration of job responsibilities" cannot constitute a materially adverse action. 548 F.3d 70, 78 (2d Cir. 2008). Although this language was quoted in *Potter*, it was *dicta*. That case held that an incident in which the plaintiff was assaulted by a supervisor did not constitute a materially adverse action; the plaintiff did not assert that he experienced an adverse based on the reassignment of his responsibilities. In any event, where, as here, a plaintiff alleges that he or she as reassigned "significantly different responsibilities," that can constitute an adverse employment action. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

articulate sufficient facts, such as any discriminatory comments, to suggest that either action occurred as the result of a disability-based animus. *See Idlisan v. New York City Health & Hosps. Corp.*, No. 12 CIV. 9163 PAE, 2013 WL 6049076, at *5 (S.D.N.Y. Nov. 15, 2013) (finding complaint did not plead "a plausible nexus" between the plaintiff's disability and defendant's failure to hire him where it lacked allegations that defendant's employees "made comments or took actions" that could give rise to an inference of discrimination). Her one allegation that she believes that the employee to whom some of her work was reassigned in February 2016 does *not* have a disability, (Compl. ¶ 91), absent any further factual support, does not warrant the requisite inference of discrimination. *Cf. Jackson v. County of Rockland*, 450 Fed. App'x 15, 19 (2d Cir. 2011) (affirming dismissal of disability discrimination claim in light of plaintiff's "bald assertions of discrimination . . . unsupported by any comments, actions or examples" from which the Court could infer that defendant's conduct was motivated by discriminatory intent); *see also Majied v. New York City Dep't of Educ.*, No. 16-CV-5731 (JMF), 2018 WL 333519, at *3 (S.D.N.Y. Jan. 8, 2018) (noting that "a plaintiff's subjective belief that she was treated differently on account of a disability is plainly not enough to state a claim"). Wallace's Rehabilitation Act claim, to the extent premised on the theory that she was effectively—then actually—terminated, is dismissed.

## II.     Age Discrimination Claim

Wallace's age discrimination claim under the ADEA fares better. To establish a *prima facie* case of such discrimination, Wallace must allege that: (1) she "was within the protected age group"; (2) she "was qualified for the position"; (3) she "experienced [an] adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Gorzinski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). In addition, she "must allege 'that age was the but-for cause of the employer's adverse action." *Vega*, 801 F.3d

at 86.

At all relevant times Wallace asserts that she was within the protected age group, i.e., over 40 years old. *See* 29 U.S.C. § 631(a); Compl. ¶ 13. Defendant does not contest that she was qualified for her position and Wallace's allegations concerning her work experience are sufficient to satisfy "the inference of minimal qualification." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001). As previously explained, Wallace has also plausibly alleged that she suffered at least two adverse employment actions—namely, the reassignment of all of her litigation duties in 2016, and her termination in 2017. Wallace thus satisfies the first three elements of her ADEA claim.

Wallace has also "ple[d] sufficient facts . . . to plausibly support a minimal inference of 'but-for' causality between [her] age" and these adverse employment actions. *See Marcus v. Leviton Mfg. Co.*, 661 Fed. App'x 29, 32–33 (2d Cir. 2016). First, Wallace alleges that she was the oldest member in her unit, that Defendant had not hired anyone above the age of 40 since 2010, and that she was effectively, then actually, replaced by someone several years younger. These allegations help to support an inference of age discrimination. *See Alejandro v. New York City Dep't of Educ.*, No. 15-CV-3346 (AJN), 2017 WL 1215756, at *13 (S.D.N.Y. Mar. 31, 2017) (delegation of plaintiff's "long-time responsibilities" to much younger, newly hired employees gave rise to an inference of age discrimination), *appeal dismissed*, No. 17-1278 (2d Cir. Aug. 28, 2017); *Burger v. New York Inst. of Tech.*, 94 F.3d 830, 834 (2d Cir. 1996) (considering that plaintiff employee was the oldest in her department as relevant factor in concluding that she established a *prima facie* case).

This Court has recently held that similar allegations, without more, do not raise the requisite inference of but-for causation under the ADEA. *See Spires v. Metlife Group, Inc.*, No.

18-CV-4464 (RA), 2019 WL 4464393, at *7 (S.D.N.Y. Sept. 18, 2019) (dismissing ADEA claim

based solely on the plaintiff's contention that he was the oldest staff member in his department

and that the position he was denied was given to a less qualified, younger employee). Here,

however, Wallace does plead more: as previously noted, she alleges that her supervisors, Lee and

McAndrew, made several ageist comments in connection with Defendant's hiring practices.

Compl. ¶¶ 80–83, 86 (alleging that Lee and McAndrew stated that the USACE Chief Counsel's

policy is to hire "only young attorneys," that Defendant "does not need old lawyers," "is hiring

only young lawyers," and "the younger, the better"). The fact that these comments were

purportedly made in 2014 and 2015—well before the reassignment of Wallace's litigation work in

2016 and her termination in 2017—does undercut their probative value. *See Martin v. City*

*University of New York*, 2018 WL 6510805, at *10 (S.D.N.Y. Dec. 11, 2018) (citing cases for the

proposition that allegedly discriminatory marks made several months prior to an adverse

employment decision cannot alone suffice to allege a causal relationship). So, too, does the fact

that they were not made within the specific context of the adverse actions at issue. *See Fried v.*

*LVI Servs., Inc.*, 500 Fed. App'x 39, 41 (2d Cir. 2012) (noting that the context in which a remark

was made, that is, "whether it was related to the decision-making process" is a relevant factor in

determining whether it suggests discriminatory bias or is merely a "stray mark"). But because the

comments clearly reflect an intent to discriminate in employment practices based on age, and

because they were allegedly made by Lee—who Wallace claims personally removed her

responsibilities and played a key role in her termination—the Court finds that they ultimately

support to an inference that Wallace experienced the adverse actions because of her age. *See id.*

(explaining that the content of the remark and whether it was made by a person with decision-

making authority in relation to the adverse actions are two additional factors to consider in

assessing whether they contribute to an inference of age discrimination).[9] Considering the Complaint's allegations in their entirety, and drawing all reasonable inferences in her favor, Wallace has pled just enough to nudge her ADEA claim "across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2013). Defendant's motion to dismiss that claim is thus denied.

### III. Gender Discrimination Claim

Similarly, Wallace adequately alleges that she was discriminated against based on her sex in violation of Title VII. "To establish a *prima facie* case of . . . gender discrimination at the motion to dismiss stage, a plaintiff must show: '(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and . . . has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation.'" *Coleman v. City of New York*, No. 17 CIV. 7864 (PAE), 2018 WL 5723133, at *4 (S.D.N.Y. Nov. 1, 2018) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)). Unlike her ADEA claim, Wallace need only plausibly allege that gender discrimination was a motivating factor—not a "but-for" cause—of the adverse employment actions she claims she experienced. *See Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019).

Wallace has pled that she is a member of a protected class because she is female. For the

---

[9] Defendant argues that the Court must not consider these comments because, it maintains, they are time-barred. But "[i]t is well established . . . that so long as at least one alleged adverse employment occurred within the applicable filing periods, evidence of an earlier alleged [discriminatory] act may constitute relevant background evidence in support of that timely claim." *Chin*, 685 F.3d at 150. "[S]tatements by a decisionmaker or earlier decisions typifying the [discrimination] involved, may be considered to assess liability on the timely alleged act." *Jute*, 420 F.3d at 176–77. Thus, although the comments were made outside the limitations period, the Court considers them as background evidence in support of Wallace's claim that the removal of her responsibilities and subsequent termination were the result of age-based discrimination.

reasons stated above, she has also adequately alleged that she is qualified for her position and that she suffered adverse employment actions. Finally, Wallace has adequately alleged that her gender played a role in Defendant's purported decision to reassign Wallace's litigation duties and to terminate her employment. Defendant is correct that in support of such a causal connection Wallace alleges only that her work was reassigned to a less qualified male employee before she was ultimately terminated. But "[t]he fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial *prima facie* stage of the Title VII analysis, including at the pleading stage." *Littlejohn*, 795 F.3d at 313 (deeming allegations that a female employee who was demoted and whose previous position was filled by a less experienced male employee to be "more than sufficient" to establish an inference that the demotion was motivated by gender discrimination); *see also de la Cruz v. New York City Human Resources Admin. Dep't of Social Services*, 82 F.3d 16, 20 (2d Cir. 1996) (holding that because the plaintiff, a Puerto Rican male, "was replaced by a black female" he satisfied the fourth prong of a *prima facie* case of discrimination under Title VII). The alleged reassignment of Wallace's work to a less qualified male employee thus suffices to meet the "*de minimis*" burden of establishing causation. *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 380–81 (2d Cir. 2001); *see also Henderson v. Gen. Elec. Co.*, 469 F. Supp. 2d 2, 14 (D. Conn. 2006) (finding plaintiff's offer of proof that a male employee assumed her duties gave rise to an inference of discriminatory animus for purposes of her *prima facie* gender discrimination claim). Defendant's motion to dismiss Wallace's gender discrimination claim is, therefore, denied.

## IV. Retaliation Claim

Wallace has also adequately alleged a claim for retaliation under Title VII. "To [allege] a *prima facie* case of retaliation [under Title VII], a plaintiff must [allege] that '(1) she engaged in

18

protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,* 716 F.3d 10, 14 (2d Cir.2013) (per curiam) (quoting *Lore v. City of Syracuse,* 670 F.3d 127, 157 (2d Cir.2012)).

Contrary to Defendant's contention, Wallace has alleged that she engaged in protected activity. A protected activity includes any action that "protest[s] or oppose[s] statutorily prohibited discrimination." *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000). Wallace repeatedly asserts that she made complaints to her supervisors and to the EEO concerning alleged discrimination and harassment that she was experiencing. *See* Compl. ¶¶ 47, 48, 52, 136–137. This constitutes protected activity. *See Giscombe v. N.Y.C. Dep't of Educ.,* 39 F.Supp.3d 396, 401 (S.D.N.Y.2014) ("'Informal complaints to supervisors,' instituting litigation, or filing a formal complaint are protected activities under Title VII.").

Wallace also alleges just enough to conclude that at least some of the adverse actions she claims to have suffered were causally connected to her protected activity. In the retaliation context, an adverse action is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega,* 801 F.3d at 90. A plaintiff may establish a causal connection between the alleged adverse action and her protected activity "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000).

Wallace claims that she was physically attacked in April 2016, and on May 1, 2016, by two of her supervisors, Lee and McAndrew, who allegedly "forc[ed] her into rooms," while Lee

19

guarded the exit and McAndrew "advanced on [her] backing her to the wall/furniture . . . and demanding [to know] what she told federal law agents about them." Compl. ¶ 160. Such physical assaults may constitute a materially adverse action for purposes of a retaliation claim. *See Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 543 (S.D.N.Y. 2008).

It is not entirely clear whether Lee and McAndrew's remarks about what Wallace "told federal law agents" were referring to Wallace's complaints of discrimination—as opposed to other conduct that she complained about, seemingly outside the scope of Title VII, which would not constitute protected activity for a Title VII retaliation claim. *See Trujillo v. City of New York*, No. 14 CIV. 8501 (PGG), 2016 WL 10703308, at *19 (S.D.N.Y. Mar. 29, 2016) (noting that complaints of excessive force did not constitute protected activity under Title VII because the complaints did not involve "workplace discrimination"), *aff'd*, 696 F. App'x 560 (2d Cir. 2017). But Wallace alleges elsewhere that her complaints to federal agents included claims of discrimination and hostile work environment. *See* Compl. ¶ 152. Drawing all reasonable inferences her favor, these remarks may be considered direct evidence of a causal connection to her protected activity. *See Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 466 (S.D.N.Y. 2013) (finding evidence that the plaintiff's "superiors were angry at him for complaining about . . . discrimination" was direct evidence of a causal connection between plaintiff's protected activity and defendant's alleged retaliation). Moreover, Wallace alleges that she complained of unlawful discrimination to the EEO on February 22, 2016—less than three months before these incidents occurred, which courts have found sufficient to establish an indirect causal connection on temporal proximity grounds. *See Gorzynski*, 596 F.3d at 110–11. Wallace has thus alleged that she experienced unlawful retaliation under Title VII based on Lee and McAndrew's purported physical

harassment of her.

With respect to the remainder of the alleged retaliatory conduct discussed earlier in this Opinion, even assuming that such conduct constitutes materially adverse actions—for instance, that Wallace's colleagues allegedly filed baseless EEO complaints about her, painted her as a violent threat at the workplace, and demanded that she return to the office while she was on military duty—she does not adequately allege that the conduct occurred in response to her discrimination complaints. The timing of her EEO complaints and her complaints to supervisors, in relation to the purported retaliatory conduct she faced, is not sufficiently articulated to permit an inference of an indirect causal connection. Wallace appears to allege that she made written complaints to the EEO and internally throughout 2012 to 2016, including on February 22, 2016. *See* Compl. ¶¶ 47–52, 55, 136. The specific instances of retaliation that she alleges occurred from 2015 through 2017. *See id.* ¶¶ 64, 103, 107, 130, 137, 148, 167, 200–201, 249. But "[i]n order for temporal proximity to establish causality . . . the intervening period must be 'very close'"—the difference between two to three months on one hand, and four to five months on the other, may be determinative. *See Dawson v. City of New York*, No. 09 CIV. 5348 PGG, 2013 WL 4504620, at *15–18 (S.D.N.Y. Aug. 19, 2013) (citing cases); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007). Because the Court is not capable of determining the number of months that passed between any of Wallace's discrimination complaints and the other alleged retaliatory acts, she has not alleged a causal connection on temporal proximity grounds. To the extent her retaliation claim is based on those incidents, it is dismissed.

## V. Hostile Work Environment Claim

Wallace also adequately alleges that she was subjected to a hostile work environment in

retaliation for her complaints, though not on the basis of her age or gender.[10] "To establish a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21. In evaluating this claim, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Even if a plaintiff can demonstrate "severe or pervasive" wrongdoing toward her at the workplace, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). To establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the conduct alleged. *See Faison v. Leonard*, No. 08 Civ. 2192(PKC), 2009 WL 636724, at *4 (S.D.N.Y. Mar. 9, 2009).

Many of Wallace's allegations in support of her hostile work environment claim lack the necessary "factual content" to support a reasonable inference that she suffered from an age- or gender-based hostile work environment. *Iqbal*, 129 S. Ct. at 1949. For example, Wallace generally alleges that she was subjected to "profane raging yelling tirades," Compl. ¶ 133, but she often does not explain by whom, when, and whether these tirades reflected any animus based on a protected characteristic. Similarly, she alleges that she was generally subjected to "cyberbullying," efforts to paint her as violent threat and a potential workplace shooter, as well as "baseless" EEO

---

[10] Wallace does not assert a separate hostile work environment claim pursuant to the Rehabilitation Act, as opposed to Title VII. In any event, such a claim would fail for the same reason—that Wallace has not adequately alleged an age- or gender-based hostile work environment.

complaints from other employees asserting that Wallace was creating a hostile work environment for others. *Id.* ¶¶ 103, 109, 133.[11] While these allegations are serious, they are not supported by specific facts to raise an inference that they are the result of a discriminatory animus. *See, e.g., Salerno v. Town of Bedford, NY,* 2008 WL 5101185, at *8 (S.D.N.Y. Dec. 3, 2008) (finding "[a]llegations of negative job evaluations or excessive reprimands . . . insufficient to establish a hostile work environment claim"); *Ingram v. Nassau Health Care Corp.,* No. 17-CV-05556 (JMA)(SIL), 2019 WL 1332857, at *8 (E.D.N.Y. Mar. 25, 2019) (finding general allegations of harassment "on an ongoing basis" predicated on "false accusations of misconduct" and a failure to investigate those accusations were too "vague and conclusory" to support a hostile work environment claim). Although other allegations are more specific by comparison—for instance, that Capowski threw a chair at Wallace in 2012, and that Lee verbally harassed her in November 2015 by telling Wallace not to discuss her son at work—Wallace does not explain how these incidents were motivated by a protected characteristic under Title VII.

By contrast, Wallace's allegations that Lee and McAndrew physically attacked her in April and May 2016—explicitly referencing the fact that she had been complaining to federal agents—and that Lee's purported bullying of Wallace continued to escalate thereafter, suffice to state a retaliatory hostile work environment claim. Following the purported physical harassment in April and May 2016, Wallace alleges that Lee: directed her to "violate her medical orders . . . and return to the office immediately or face discipline . . . including removal," Compl. ¶ 177; "set about

---

[11] Although these acts purportedly occurred throughout her employment at USACE, including well before the filing of her EEOC complaint, they may nonetheless be considered in assessing whether Wallace's hostile work environment passes muster under Rule 12(b)(6). *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002) (explaining that, with respect to a Title VII hostile work environment claim, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

removing [Wallace] as 'medically incapable of performing," *id.* ¶ 199; "threatened to dock [Wallace's] pay" and to file criminal charges against her, *id.* ¶ 183; reassigned all of her litigation work, *id.* ¶ 225; and "cut [Wallace] off from information and records" to then "accuse of her incompetence," *id.* ¶ 230. Considering these allegations in addition to those that Lee and McAndrew "physically bullied and threatened" Wallace, are enough to establish a severe or pervasive form of harassment motivated by a retaliatory animus. *See Kaytor v. Elec. Boat Corp.,* 609 F.3d 537 (2d Cir. 2010) (finding plaintiff established retaliatory hostile work environment claim based on evidence that she was repeatedly summoned by human resources to unnecessary meetings, was given no work, and was constantly yelled at by her new supervisor); *Williams v. New York City Housing Auth.,* 154 F. Supp. 2d 820, 825 (S.D.N.Y. 2001) (noting that physical threats and assaults motivated by discriminatory animus "are the most egregious form of workplace harassment"); *Johnson v. City of New York,* 2018 WL 1597393, at *16 (E.D.N.Y. Mar. 31, 2018) (concluding that allegations that plaintiff firefighter was repeatedly subjected to baseless negative performance reviews, and a false story that he abandoned his colleagues at a fire, stated a retaliatory hostile work environment claim). Wallace's retaliatory based hostile work environment claim will thus proceed.

## VI. Reprisal Claim Under the WPA

Finally, Defendant's motion to dismiss Wallace's WPA claim under 5 U.S.C. § 2302(b)(8) is denied.

While the Second Circuit has not directly addressed the pre-requisites for a district court's exercise of subject matter jurisdiction over a WPA claim, the Ninth Circuit has held that, in order to have such jurisdiction: (1) the plaintiff asserting the WPA claim must have raised it before the MSPB; (2) as part of a so-called "mixed case"—that is, a case involving "a personnel action serious

enough to appeal to the MSPB," such as removal, together with discrimination claims[.]" *Kerr v. Jewell*, 836 F.3d 1048, 1053-1054 (9th Cir. 2016) (affirming that the district court lacked jurisdiction to entertain WPA claim because it was not previously asserted before the MSPB).

Defendant does not dispute that either of these requirements are present here. And the June 19, 2017 MSPB decision affirming Wallace's removal, which Wallace attached to her original complaint, indicates that she did indeed raise her WPA claim as part of a "mixed case." *See Wallace v. Dep't of the Army*, No. NY-0752-17-0141-I-1, at 25 (M.S.P.B. May 15, 2018) (Dkt. 1). In seeking the MSPB's review of her termination, Wallace asserted various discrimination claims, and her WPA claim, as affirmative defenses. The MSPB decided, however, that Wallace failed to preserve those affirmative defenses, except for her defense that she was removed because of Defendant's failure to reasonably accommodate her disabilities. *See id.* Following the approach of the *Kerr* Court here, this Court's review of Wallace's claim will be limited to reviewing the administrative record in connection with the MSPB decision which Defendant has yet to file. *See* 836 F.3d at 1057 (explaining that "judicial review of agency decisions on WPA claims is deferential," and that without an administrative record to review, district courts have no decision upon which to defer). In the meantime, then, Defendant's motion to dismiss Wallace's WPA claim under Rule 12(b)(6) is denied. As with Wallace's claim seeking judicial review of Defendant's termination decision, Defendant may move for summary judgment on Wallace's WPA claim once it has filed the administrative record.

## CONCLUSION

For the foregoing reasons, Plaintiff's claim for disability discrimination, pursuant to the ADA, is DISMISSED with prejudice. Plaintiff's claim for disability discrimination, pursuant to the Rehabilitation Act, to the extent based on an adverse action theory, is DISMISSED without

prejudice; Plaintiff's Rehabilitation Act claim, to the extent based on a failure to reasonably accommodate theory, will proceed. Plaintiff's claims for age discrimination under the ADEA, and gender discrimination, retaliation, and hostile work environment under Title VII, will also proceed, as will her claim for whistleblower reprisal under the WPA.

By separate order, this matter will be referred to a Magistrate Judge for general pre-trial purposes. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 20.

SO ORDERED.

Dated:   September 30, 2019
         New York, New York

Ronnie Abrams
United States District Judge